**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>            v.<br><br><br>PETER BELER,<br><br>                Defendant. | Case No. 19-mj-100 (BAH)<br><br>Chief Judge Beryl A. Howell |

**MEMORANDUM OPINION**

The government seeks review of a magistrate judge's dismissal, with prejudice, of a criminal complaint against the defendant Peter Beler, which complaint charged him with distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2).  Gov't's Amended Request for Review of Magistrate Order of Dismissal with Prejudice ("Gov't's Req.") at 1–3, ECF No. 21.[1]  The magistrate judge granted this remedy after determining that the defendant's rights under the Speedy Trial Act ("STA"), 18 U.S.C. §§ 3161–74, had been violated due to delays in the defendant's transportation to Bureau of Prisons ("BOP") medical facilities for a competency evaluation and then for competency restoration.  After consideration of the parties' submissions and a hearing on this motion, the magistrate judge's dismissal decision is vacated and the criminal complaint is reinstated.

## I.    BACKGROUND AND FINDINGS

The defendant was arrested on April 17, 2019 on a one count criminal complaint for distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2), and made his initial

---

[1]    Review of magistrate judge orders issued in criminal matters that have yet to be randomly assigned to a district court judge are directly assigned to the Chief Judge.  *See* D.D.C. CRIM. R. 59.3(a) (providing that "[r]equests for review of an order by a magistrate judge in a criminal matter not assigned to a district judge . . . are to be made to the Chief Judge").

appearance before the magistrate judge the same day.  Def.'s Motion to Dismiss ("Def.'s Mot.") at 1, ECF No. 16; Gov't's Opp'n to Def.'s Motion to Dismiss ("Gov't's Opp'n") at 1, ECF No. 18.  Two motions were made at the defendant's initial appearance: (1) the government made an oral motion for the defendant's temporary pretrial detention and (2) both the defendant and government jointly orally moved for a forensic screening of the defendant to ascertain whether further evaluation was necessary to determine his competence to stand trial.  *See* Min. Entry (Apr. 17, 2019); Referral and Order ("Forensic Screening Order") at 1, ECF No. 3 (directing forensic screening examination to be conducted by a District of Columbia Department of Behavioral Health psychologist on April 19, 2019, with a report to be submitted "as soon as practical" thereafter).  A hearing on the government's detention motion, along with a preliminary hearing, was set for April 22, 2019. *See* Min. Entry (Apr. 17, 2019). Within three days, by the next scheduled court date, the forensic screening report had been completed.  *See* Forensic Screening Report (Apr. 22, 2019) at 1, ECF No. 6.

At the hearing on April 22, both parties expressed agreement to follow the recommendation of the forensic psychologist for a more extensive evaluation of the defendant's competence, and defense counsel moved to continue the preliminary hearing "pending the outcome of the competency determination." Min. Entry (Apr. 22, 2019).  Defense counsel's motion was denied.  *Id*. (deferring "the entry of the order committing the defendant to the custody of the Attorney General for an evaluation until the threshold issue is resolved").  The preliminary and detention hearings were set for the following day.  *Id*.

On April 23, the magistrate judge found, following the preliminary hearing, probable cause for the defendant's arrest, Min. Entry (Apr. 23, 2019), and then entered an order committing the defendant to the custody of the Attorney General so that he could be sent to a

suitable facility for a thirty-day competency evaluation, pursuant to 18 U.S.C. § 4247(b).  Order (April 23, 2019) ("Competency Evaluation Order") at 1, ECF No. 8.  The parties jointly moved orally to continue the detention hearing "until the competency evaluation has been completed," and this motion was granted, with a status conference set for June 18, 2019.  Min. Entry (Apr. 23, 2019).

Although the Competency Evaluation Order was entered on April 23, execution of that order was so delayed that the defendant did not arrive in BOP's designated federal correctional institution ("FCI") in Englewood, Colorado for the evaluation until 38 days later, on May 31. *See* U.S. Marshals Serv. ("USMS") Individual Custody and Detention Rep. ("USMS Rep.") at 2, ECF No. 30.[2]  During defendant's evaluation at FCI Englewood he was seen for a 15-minute arrival screening, an initial 75-minute evaluation session, and a second evaluation session lasting 90 minutes.  Forensic Evaluation of Defendant (July 29, 2019) ("Forensic Eval.") at 3, ECF No. 14 (describing the evaluation procedures).  Although these interactions with forensic evaluators at the facility totaled only three hours, he remained at the facility for 55 days partly owing to a prolonged period of medical isolation to address a separate medical issue.  *Id*. at 2 (explaining that the defendant was in medical isolation "until July 1, 2019"); USMS Rep. at 2 (showing that defendant left FCI Englewood on July 25, 2019).  Over this period, hospital staff "oberv[ed] . . . his behavior at the facility" and those observations aided the forensic psychologist in preparing her report.  Forensic Eval. at 2.  On July 25, the defendant was moved to a jail in Oklahoma, where he stayed for two weeks until, on August 8, he was transferred to a jail in Piedmont,

---

[2]      The parties initially represented, both to the magistrate judge and this Court, that the defendant arrived at FCI Englewood "on or about June 3, 2019."  *See, e.g.,* Gov't's Consent Mot. to Cont. Status Hr'g, ¶ 3, ECF No. 12.  After prompting from the Court to address discrepancies in the record regarding that arrival date, including communications from FCI Englewood indicating that the defendant arrived there on May 31, *see* Letter from Forensic Psychologist at BOP Facility (July 1, 2019) at 1, ECF No. 11, the government confirmed that May 31 is the correct date of his arrival at that facility, Gov't's Resp. to October 17, 2019 Order at 1, ECF No. 23.

Virginia. USMS Rep. at 2.[3] Meanwhile, the BOP forensic psychologist at FCI Englewood prepared her report, which the magistrate judge received and docketed, under seal, on August 6. *See* Forensic Eval. at 1.

Due to the delays in receiving the forensic evaluation from the government, the previously scheduled June 18 status conference had to be postponed twice. *See* Def.'s Consent Mot. to Cont. Status Hr'g at ¶¶ 3–4, ECF No. 9 (seeking to continue status conference for 30 days because, due to transport delays, defendant's "examination has not yet been completed," as of June 13, 2019, and stating that "[t]his thirty-day time period is automatically excluded under the [STA]," citing 18 U.S.C. § 3161(h)(1)(A)); Gov't's Consent Mot. to Cont. Status Hr'g at ¶¶ 5, 7, ECF No. 12 (seeking to continue status conference for 27 days because additional time was needed to complete evaluation "due to a high volume of forensic cases" and stating that "[t]his time period is automatically excluded under the Speedy Trial Act," citing 18 U.S.C. § 3161(h)(1)(A) (internal quotation marks omitted). The next court hearing occurred on August 14, a week following receipt of the BOP forensic evaluation originally ordered almost four months earlier on April 23. *See* Min. Entry (Aug. 14, 2019) (explaining that the "[c]ase was set for a Control/Status Hearing, but the defendant was returned to this jurisdiction and a Competency Hearing was held instead").

On August 14, the magistrate judge held the competency hearing, at which the parties concurred with the BOP forensic psychologist's report that the defendant was incompetent to

---

[3]     Defense counsel has detailed the difficulties faced in being able to discern the precise location or movement of the defendant during his return transit from FCI Englewood to this District, in order to talk to him about his case. Tr. of Hr'g (Oct. 25, 2019) on Gov't's Req. before Chief Judge ("Oct. 25 CJ Hr'g") at 34–36, ECF No. 32 (defense counsel explaining that her assistant "was calling the D.C. jail daily" because she wanted to visit her client). In fact, despite numerous efforts to obtain information about the defendant's whereabouts from the USMS, the U.S. Attorney's Office, and D.C. Jail, defense counsel was unaware until the defendant's competency hearing on August 14 that the defendant had been returned to the District of Columbia. *Id.* at 34 (defense counsel stating: "By the time I walked into court . . . I was, frankly, shocked that [the defendant] was [there].")

4

stand trial and should be referred for competency restoration treatment.  *See id*.  After finding "that the defendant is not competent at this time to proceed," *id.*, the magistrate judge ordered that the defendant be committed to a BOP facility to obtain treatment for sixty days in an effort to achieve that restoration, with the next hearing set for October 7.  *See* Order (Aug. 14, 2019) ("Competency Restoration Order") at 1–2, ECF No. 15.

Six weeks after the entry of the Competency Restoration Order, defense counsel alerted the magistrate judge that not only had the defendant's competency not been restored, the defendant had not even started his treatment.  Def.'s Mot. at 2.  Instead, as of the date the motion was filed, September 24, the defendant had been "awaiting transport to the [BOP] for forty-one days for a competency restoration and is still sitting in the D.C. Jail." *Id*. at 1.  In fact, the government advised that the defendant would not be transferred to a hospital until December 2019.  Gov't Opp'n at 8–9; *see also* Tr. of Hr'g (Oct. 7, 2019) on Def.'s Mot. to Dismiss before Magistrate Judge ("Oct. 7 MJ Hr'g") at 26, ECF No. 22.  By the date of the next hearing, on October 7, the defendant had been awaiting transport for competency restoration for "54 days."  Def.'s Reply to Gov't's Opp'n at 2, ECF No. 19.

This troubling delay in transporting the defendant to an appropriate BOP facility to execute the Competency Restoration Order was addressed by the magistrate judge at the October 7 hearing.  The magistrate judge found that the delay was presumed unreasonable under the STA and that the government had thus failed timely to indict the defendant.  Oct. 7 MJ Hr'g at 21.  As a result, she dismissed the complaint against the defendant with prejudice. *Id.* at 26–27.  The government has now sought review of the magistrate judge's dismissal decision. *See generally* Gov't's Req.

II.     **LEGAL STANDARD**

Magistrate judges are assigned certain duties and powers to handle criminal matters before a case is assigned to a district judge.  D.D.C. CRIM. R. 57.17(a); *see also* 28 U.S.C. § 636(b)(3) (permitting district courts to "assign[] . . . additional duties [to magistrate judges] as are not inconsistent with the Constitution and laws of the United States").  When a party requests review of a magistrate judge's order issued pursuant to one of those powers, that order "may be accepted, modified, set aside, or recommitted to the magistrate judge with instructions, after de novo review by the Chief Judge."  D.D.C. CRIM. R. 59.3(b); *see also United States v. Wheeler*, 746 F. Supp. 2d 159, 161 (D.D.C. 2010) (Lamberth, C.J.) (reviewing *de novo* same magistrate judge's order dismissing a criminal complaint for violations of the STA, without addressing magistrate judge's power to exercise this authority).

III.    **DISCUSSION**

A threshold matter raised by the government's request for review is whether magistrate judges are authorized to dismiss criminal complaints, absent the government's consent, for reasons other than lack of probable cause.  This jurisdictional issue is addressed first before turning to the merits of the magistrate judge's decision that the defendant's STA rights were violated and properly remedied by dismissal with prejudice of the criminal complaint.  As explained below, the magistrate judge lacks the authority to dismiss a criminal complaint for STA violations and, construing her decision as a recommendation, the Court concludes that, despite the troubling and lengthy delays in executing the magistrate judge's orders, no STA violation occurred and therefore the criminal complaint should not have been dismissed.

## A.   MAGISTRATE JUDGE LACKED AUTHORITY TO DISMISS THE CRIMINAL COMPLAINT.

The question of whether a magistrate judge has the power to dismiss a criminal complaint without the government's consent is unresolved by the D.C. Circuit.  *United States v. Bowman*, 496 F.3d 685, 688–89 (D.C. Cir. 2007) (explaining that, although "the [district] court held that the magistrate lacked authority to dismiss a felony complaint with prejudice," the appeals panel did not need to "resolve the underlying authority of the magistrate judge in order to decide [the] case"); *see also United States v. Fahnbulleh*, 742 F. Supp. 2d 137, 142, 144 n.8 (D.D.C. 2010) (noting that the government argued that the magistrate judge "lacked the authority under the Federal Magistrate Act to" dismiss a criminal complaint on STA grounds, but because reversal was warranted on other grounds finding no need to "address the issue of whether the Federal Magistrate Act authorizes a magistrate judge to dismiss a criminal complaint").  The courts to have addressed the issue have answered in the negative.  *See, e.g.*, *United States v. Bowman*, No. 04-cr-60, Mem. Op. & Order at 5, ECF No. 9 (D.D.C. Mar. 31, 2004) (Collyer, J.), *aff'd*, 496 F.3d 685 (D.C. Cir. 2007)(finding magistrate judge's order dismissing criminal complaint with prejudice "contravened [] limitations" in Federal Magistrates Act); *United States v. Segal*, 2002 WL 538775 at *2–3 (N.D. Ill. Apr. 10, 2002) (holding that a magistrate judge "lacks the legal authority to involuntarily dismiss a felony criminal complaint with prejudice"); *United States v. Trybus*, No. 05-mj-2161, 2006 WL 1763672, at *4 (W.D.N.Y. Jun. 23, 2006) ("given the ultimate dispositive nature of a dismissal of a Complaint with prejudice, a Magistrate Judge lacks jurisdiction under 28 U.S.C. § 636 to order dismissal on that basis").

The Federal Magistrates Act ("FMA"), 28 U.S.C. §§ 631–39, governs the selection, tenure and authorities of federal magistrates and, in section 636, defines their jurisdiction and powers.  "Through gradual congressional enlargement of magistrates' jurisdiction, the [FMA]

now expressly authorizes magistrates to preside at jury trials of all civil disputes and criminal

misdemeanors, subject to special assignment, consent of the parties, and judicial review," and to

handle certain "pretrial and post-trial matters, specifying two levels of review depending on the

scope and significance of the magistrate's decision." *Gomez v. United States*, 490 U.S. 858, 871

(1989). Specifically, as pertinent here, subsection (a) lists the powers magistrate judges "shall

have," including those "conferred" by the Federal and Local Rules of Criminal Procedure, 28

U.S.C. § 636(a)(1), as well as the power to "administer oaths," issue pretrial release or detention

orders, "take" affidavits and depositions, *id.* § 636(a)(2), conduct misdemeanor trials with the

consent of the defendant, *id.* § 636(a)(3), *see also* 18 U.S.C. § 3401(b) (requiring a misdemeanor

defendant's consent to magistrate judge jurisdiction), and "enter a sentence for a petty offense"

or, with the parties' consent, for a class A misdemeanor, 28 U.S.C. §§ 636(a)(4)–(5). The

FMA's incorporation of the Federal Rules of Criminal Procedure means that magistrate judges

have the authority to dismiss a criminal complaint when, at a preliminary hearing, they "find[] no

probable cause to believe an offense has been committed." FED. R. CR. P. 5.1(f).

The next subsection authorizes a district court judge to "designate" a magistrate judge to

"determine any pretrial matter," except for a discrete list of motions, conduct hearings for those

excepted motions and certain other post-trial or prisoner applications, 28 U.S.C.

§§ 636(b)(1)(A)-(B), or serve as a special master, *id.* § 636(b)(2). Among the excepted motions

that a magistrate may not resolve are a "motion . . . to suppress evidence in a criminal case," a

"motion . . . to dismiss or quash an indictment or information," or to otherwise "involuntarily

dismiss an action." *Id.* § 636(b)(1)(A). A magistrate judge designated to hold an evidentiary or

other hearing on any excepted motions must file "proposed findings and recommendations" for

the court's "de novo determination." *Id.* § 636((b)(1)(C) ("A judge of the court may accept,

reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."); *see Elgin v. Dep't of the Treasury*, 567 U.S. 1, 19 (2012) (noting that "Congress has authorized magistrate judges, for example, to conduct evidentiary hearings and make findings of fact relevant to dispositive pretrial motions, although they are powerless to issue a final ruling on such motions"). The district court may also assign to a magistrate judge "such additional duties as are not inconsistent with the Constitution and laws of the United States" and "establish rules" to govern the "discharge [of] their duties." *Id*. § 636(b)(3)–(4).[4]

The magistrate judge in this case was not designated to hear and determine the defendant's motion to dismiss the criminal complaint, rendering subsection 636(b) inapplicable. The defendant argues to the contrary, suggesting that the local rules of this Court have the effect of such a designation. Def.'s Br. Addressing the Magistrate Judge's Authority to Dismiss the Compl. with Prejudice ("Def.'s Supp. Br.") at 2–3, ECF No. 33. Under the defendant's theory, because criminal cases are not assigned to district court judges until the filing of an information or indictment, *see* D.D.C. CRIM. R. 57.10(a)(2), all pre-indictment criminal complaints are referred to magistrate judges. Even were the local rules read to effect this freestanding referral, the FMA does not grant the magistrate judge authority to dismiss a criminal complaint in these circumstances. Any "involuntar[y] dismiss[al]" of an action is an excepted motion that may not be resolved by a magistrate judge, 28 U.S.C. § 636(b)(1)(A), but only determined by "[a] judge of the court," *id*. § 636(b)(1)(C). As with "all . . . dispositive matters," the magistrate judge may only "make 'proposed findings of fact and recommendations.'" *United States v. Islam*, 932 F.3d

---

[4]     The subsequent subsections outline the powers magistrate judges may exercise in civil matters with the consent of the parties, 28 U.S.C. § 636(c), the procedures for trials before magistrates, *id*. § 636(d), a magistrate judge's contempt authority, *id*. § 636(e), the temporary assignment of magistrate judges to other jurisdictions, *id*. § 636(f), a magistrate judge's authority to verify a defendant's consent to be transferred to or from a foreign country, *id*. § 636(g), and the recall of retired magistrate judges, *id*. § 636(h). They are thus irrelevant here.

957, 961 (D.C. Cir. 2019) (*quoting* 28 U.S.C. § 636(b)(1)(B)); *see also Elgin v. Dep't of Treasury*, 567 U.S. at 19 (commenting that magistrate judges are "powerless to issue a final ruling" on "dispositive pretrial motions"); H.R. Rep. No. 94-1609, at 2 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6162, 6162 (explaining that "the intent of Congress [was] that all motions to dismiss, and therefore dispositive motions, will be subject to the [report and recommendation] procedures of [28 U.S.C. § 636(b)(1)(B)–(C)]").

In pressing his theory that magistrate judges have powers under subsection (b) in pre-indictment cases, the defendant contends that subsection (b)(3), which provides that "[a] magistrate judge may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States," 28 U.S.C. § 636(b)(3), allows magistrate judges to dismiss complaints for STA violations. Def.'s Supp. Br. at 3–4. Given that other provisions of the FMA withhold the power to ultimately dispose of cases, that claim is dubious. Moreover, the Supreme Court has cautioned that "[t]he general, nonspecific terms of this paragraph [§ 636(b)(3)], preceded by text that sets out permissible duties in more precise terms, constitute a residual or general category that must not be interpreted in terms so expansive that the paragraph overshadows all that goes before." *Gonzalez v. United States*, 553 U.S. 242, 245 (2008).

In any case, the defendant does not point to any rule that "assigned" magistrate judges the authority to dismiss criminal complaints in this District—and the reason is that none exists. *See* Fed. R. Crim. P. 59(b) (making clear that, when it comes to dispositive matters, a district court may only refer them to a magistrate judge "for recommendation"). Local Criminal Rule 57.17 catalogs the duties and powers of a magistrate judge and, while listing several freestanding powers of a magistrate judge, nowhere does this rule purport to grant magistrate judges the power to dismiss a criminal complaint. D.D.C. Crim. R. 57.17(a). Instead, the Local Criminal

Rules withhold the power to enter dispositive orders even when the case is referred to a magistrate judge from a district court judge.  *See* D.D.C. CRIM. R. 57.17(b) (granting the power to "dismiss indictments," but only when the case has been referred by a district court judge, the motion is made by the government, and the defendant consents); D.D.C. CRIM. R. 59.1(a) ("At the request of the district judge to whom a felony case is assigned, a magistrate judge may hear and determine any *nondispositive* pretrial motion." (emphasis added)); Comment to D.D.C. CRIM. R. 59.1 ("Section (a) has been amended to make clear that magistrate judges may determine only *nondispositive* motions or matters in a felony case." (emphasis added)); D.D.C. CRIM. R. 59.2(a) (explaining that a magistrate judge may "submit to the district judge proposed findings of fact and recommendations for the disposition of . . . motions to dismiss . . . or any matter that may dispose of a charge or defense").[5]  Simply put, magistrate judges have not been assigned the authority to dismiss criminal complaints for STA violations in this District.[6]

That leaves only subsection 636(a), which provides an express grant of powers to magistrate judges, as a possible source of the authority for the magistrate judge's dismissal.  Yet, the authority to dismiss criminal complaints for a violation of the STA is not among the express powers magistrate judges automatically enjoy under that provision.  At the same time, this subsection incorporates the Federal and Local Rules of Criminal Procedure, 28 U.S.C.

---

[5]    Nor would a grant of authority to dismiss criminal complaints under this Court's local rules likely be allowed.  *See* FED. R. CRIM. P. 57(a)(1) ("A local rule must be consistent with—but not duplicative of—federal statutes and rules . . . ."); FED. R. CRIM. P. 59(b) (explaining that "any matter that may dispose of a charge or defense" may be submitted to a magistrate judge "for recommendation"); 28 U.S.C. § 636(b)(1)(A) (similarly withholding from magistrate judges the ability to "determine . . . a motion . . . to involuntarily dismiss an action").

[6]    The cases cited by the defendant are not to the contrary.  Def.'s Supp. Br. at 5–6, (*citing Bowman*, 496 F.3d at 691; *Fahnbulleh*, 742 F. Supp. 2d at 144 n.7; *Wheeler*, 746 F. Supp. 2d at 161).  None of those cases squarely addressed whether a magistrate judge had the authority to dismiss a criminal complaint.  *Bowman* and *Fahnbulleh* explicitly avoided the question.  *Bowman*, 496 F.3d at 689; *Fahnbulleh*, 742 F. Supp. 2d 137 at 144 n.8.  *Wheeler* made no mention of the issue and simply reversed the magistrate judge's holding on other grounds.  *Wheeler*, 746 F. Supp. 2d at 160.  Indeed, part of the reason this Court chooses to take up this jurisdictional issue, despite the parties not raising it in their initial briefing, is to address the lingering confusion created by lack of clear resolution of this issue in the more than fifty years since the FMA was enacted.

§ 636(a)(1), but as described above, those rules limit a magistrate judge's authority to recommending disposition of a case, not determining it. In fact, the only scenario in which a magistrate judge may dismiss a complaint on her own authority without the parties' consent is following a finding that the government lacked probable cause to charge the defendant. FED. R. CR. P. 5.1(f). In sum, absent any grant of power by a district court judge, federal or local rule, or statute, the magistrate judge acted outside her authority when she dismissed the complaint.

The fact that the magistrate judge lacked the authority to dismiss this criminal complaint may provide a reason to reverse that dismissal and return the case to the magistrate judge for the preparation of a report and recommendation on whether the criminal complaint ought to be dismissed. At this point, however, that approach would likely be a waste of time and judicial resources. The magistrate judge made her opinion on the matter clear when she orally granted the motion to dismiss and the parties have made their positions evident in their briefing before this Court. Accordingly, this Court will follow the lead of others in this district and construe the proceedings below, including the transcript of the oral order dismissing the case, as the magistrate judge's recommendation and will construe the parties' briefs as objections to the recommendation and responses to those objections. *See, e.g., David v. District of Columbia*, 252 F.R.D. 56, 58–59 (D.D.C. 2008) (Roberts, J.).

## B. THE DEFENDANT'S RIGHTS UNDER THE SPEEDY TRIAL ACT WERE NOT VIOLATED.

The STA requires that an "information or indictment" be filed "within thirty days from the date on which [the defendant] was arrested." 18 U.S.C § 3161(b). Computation of this thirty-day period "shall" exclude enumerated "periods of delay," *id.* § 3161(h), which operate to

stop the so-called "speedy trial clock," *United States v. Tinklenberg*, 563 U.S. 647, 650 (2011).[7]

As relevant to this case, the following periods of delay trigger exclusions:

> (A)      delay resulting from any proceeding, including any examinations, to determine the mental competency . . . of the defendant . . .

> (D)      delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion . . .

> (F)      delay resulting from transportation of any defendant from another district, or to and from places of examination or hospitalization, except that any time consumed in excess of ten days from the date an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable . . . and

> (H)      delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court.

18 U.S.C. § 3161(h)(1).  A separate subsection of the STA also excludes "[a]ny period of delay resulting from the fact that the defendant is mentally incompetent or physically unable to stand trial."  *Id*. § 3161(h)(4).

Determining whether a defendant's STA rights have been violated requires consideration of these sometimes overlapping STA exclusions.  A simplified visualization of the events relevant to that inquiry is thus helpful:



---

[7]      These "periods of delay" also operate to exclude time from the seventy-day period that commences on the later of the defendant's first appearance or the filing of an indictment within which a trial must commence.  18 U.S.C. § 3161(c)(1).  In this case, no indictment has been filed, so the running of that separate clock is immaterial.

The government posits that several STA exclusions excuse any delay in filing an indictment against the defendant by the time the defendant filed his motion to dismiss on September 24.[8]  First, the government relies primarily on the exclusion, under 18 U.S.C. § 3161(h)(1)(D), for "delay resulting from any pretrial motion," arguing that because the magistrate judge neither held a hearing nor ruled on the oral pretrial detention motion, all time from April 17 until the filing of the defendant's motion to dismiss is excluded.  Second, alternatively, the government contends that the exclusion, under 18 U.S.C. § 3161(h)(1)(A), for "delay resulting from any proceeding, including any examinations, to determine the mental competency . . . of the defendant," operates to exclude the period from the Forensic Evaluation Order on April 23 until the defendant was found incompetent on August 14.  Finally, the government contends that the exclusion, under 18 U.S.C. § 3161(h)(4), for "[a]ny period of delay resulting from the fact that the defendant is mentally incompetent . . . to stand trial," applies to exclude the time period from August 14, when the defendant was declared incompetent, until the filing of the defendant's motion to dismiss.  Each of those arguments is addressed in turn.

### 1. At Least Until August 14, 2019, All Time Was Excludable Under Subsection (h)(1)(D) for Pendency of Pretrial Detention Motion.

On April 17, when the defendant was arrested and made his initial appearance before the magistrate judge, the government orally moved for the defendant's pretrial detention.  A hearing on that motion was set for April 22.  That oral motion stopped the thirty-day speedy trial clock. *United States v. Taylor*, 497 F.3d 673, 676 (D.C. Cir. 2007) (holding that oral motions trigger the pretrial motions exclusion).  Yet, no hearing was ever held on that motion, given the immediate

---

[8]     Neither party disputes that all time following the filing of the motion to dismiss is excluded. 18 U.S.C. § 3161(h)(1)(D) (excluding "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion"); *see also United States v. Wilson*, 835 F.2d 1440, 1444 (D.C. Cir. 1987) (finding unpersuasive "the argument that exclusion of time spent on speedy trial motions is forbidden"), *abrogated on other grounds by Bloate v. United States*, 559 U.S. 196 (2010).

focus of both the magistrate judge and the parties on the pressing issue of the defendant's competency to stand trial.  This focus on an issue other than the government's motion for pretrial detention prompts the question whether that motion effectively stopped the clock and if so, for how long was the clock tolled?

The Supreme Court has provided guidance on resolving these questions.  In *Henderson v. United States*, the Supreme Court engaged in an extended discussion of the pretrial motion exclusion. 476 U.S. 321 (1986).[9]  In that case, several defendants filed a suppression motion, but, due to "overlapping filings," the motion was pending without a hearing for nearly five months and then, due to posthearing submissions, the motion remained unresolved for another ten months.  *Id*. at 323-24.  The Court noted that the pretrial motions exclusion "excludes time in two situations":  First, when a particular pretrial motion requires a hearing, "subsection ([D]) on its face excludes the entire period between the filing of the motion and the conclusion of the hearing."  *Id*. at 329.  Second, when the pretrial motion does not require a hearing and results in "prompt disposition," the Court held that "the promptness requirement was 'intended to provide a point at which time will cease to be excluded.'"  *Id*. (*quoting* S. Rep. No. 96-212, at 34). According to *Henderson*, the "point at which time will cease to be excluded" is "identified by subsection ([H]), which permits an exclusion of 30 days from the time a motion is actually 'under advisement' by the court."  *Id*.  The Court went on to explain that "all time" between the filing of a motion that requires a hearing and the conclusion of that hearing is excluded, "whether or not a delay in holding that hearing is 'reasonably necessary.'"  *Id*. at 330.

---

[9]      Over twenty years after *Henderson*, two subparagraphs were removed in 2008 from subsection 3161(h)(1), but otherwise this subsection remained unchanged.  *See* Judicial Administration and Technical Amendments Act of 2008, Pub. L. No. 110-406, § 13, 122 Stat. 4291, 4294 (2008).  To avoid confusion, *Henderson*'s references to STA provisions will be altered to conform to the current statute.

Thus, in *Henderson*, the entire period from the filing of the suppression motion until the hearing on that motion was "automatically excludable" regardless of the fact that the hearing was seriously delayed by other proceedings. *Id.* at 332; *cf.* Petitioners' Brief at 5, *Henderson v. United States*, 476 U.S. 321 (1986) (No. 84-1744), 1985 WL 669342, at *5 (explaining that 63 of the days eventually excluded by the Supreme Court were postponements to the suppression hearing made by the district court without "reason" or "explanation").[10] In reliance on *Henderson*, the D.C. Circuit has repeatedly emphasized that for "motions that require a hearing . . . all time is excluded, whether 'reasonably necessary' or not." *United States v. Bryant*, 523 F.3d 349, 359 (D.C. Cir. 2008); *see also United States v. Rice,* 746 F.3d 1074, 1081 (D.C. Cir. 2014) (addressing application of subsection (h)(1)(D) to delay period between May 23, 2005 and January 4, 2006, when a suppression motion was pending, and explaining "[r]egardless of whether the district court could have held a hearing on this motion earlier—the record does not make clear why it did not—the entire period of the motion's pendency is excluded."); *United States v. Van Smith*, 530 F.3d 967, 969 (D.C. Cir. 2008) ("If the court holds a hearing, the Act excludes the period of time between the filing of the motion and the conclusion of the hearing, whether or not consideration of the motion caused 'actual delay of the trial,' *United States v. Wilson*, 835 F.2d 1440,1443 (D.C. Cir. 1987), and whether or not the amount of delay that occurred was 'reasonable,' *Henderson*, 476 U.S. at 326–27."); *United States v. Holmes*, 508 F.3d 1091, 1096 (D.C. Cir. 2007) (noting that "[a]n anticipated hearing can toll the speedy trial clock" even if it is never held) (*citing United States v. Maxwell*, 351 F.3d 35, 38–40 (1st Cir. 2003)); *United States v. Saro*, 24 F.3d 283, 292 (D.C. Cir. 1994) ("Section 3161(h)(1)([D]) calls for the

---

[10]     The Supreme Court also excluded the ten months between the hearing and the final disposition of the motion. *Henderson*, 476 U.S. at 331. No hearing has yet been held on the oral detention motion at issue in this case, so the Supreme Court's analysis of post-hearing delay has no bearing on the analysis here.

exclusion of the entire time (whether or not reasonable) between the filing of 'any pretrial

motion' and the conclusion of a hearing on the motion, or, if no hearing is held, the day the court

'receives all the papers it reasonably expects' to help it decide the motion.").

The pretrial detention motion at issue here is the kind of motion for which a hearing is

required.  *See* 18 U.S.C. § 3142(f)(1)(E) ("The judicial officer *shall* hold a hearing . . . upon

motion of the attorney for the Government, in a case that involves . . . any felony that is not

otherwise a crime of violence that involves a minor victim." (emphasis added)); *see also id.*

§ 3142(e)(3)(E) (defining 18 U.S.C. § 2252(a)(2), the offense listed in the criminal complaint in

this case, as "an offense involving a minor victim").  The parties clearly expected that, at some

point, the pretrial detention motion would need to be resolved at a hearing before the magistrate

judge.  *See* Min. Entry (Apr. 23, 2019) (continuing the detention hearing "until the competency

evaluation has been completed, heard and granted").[11]  Thus, at least until August 14th, the date

on which the magistrate judge considered and agreed with the competency evaluation and

declared the defendant incompetent, under binding Supreme Court and D.C. Circuit precedent,

the speedy trial clock was tolled.  *Henderson*, 476 U.S. at 330; *Rice,* 746 F.3d at 1081; *Bryant*,

523 F.3d at 359; *Holmes*, 508 F.3d at 1096.

*Holmes* is particularly instructive.  There, in determining whether a defendant was denied

effective assistance of counsel, the D.C. Circuit confronted circumstances closely analogous to

the instant situation since the district court was considering two competing motions—a

government motion to limit the admission of certain evidence and a defendant's *Bruton* motion.

---

[11]     The record was not entirely clear as to all of the automatic STA exclusions that applied during the period
from April 17 to August 14.  The parties, for example, jointly sought continuances in the scheduled June 18 status
conference while awaiting the results of BOP's competency evaluation by referencing only the automatic exclusion
under 18 U.S.C. § 3161(h)(1)(A) for mental competency evaluation proceedings, *see* Def.'s Consent Mot. to Cont.
Status Hr'g at ¶ 4, ECF No. 9; Gov't's Consent Mot. to Cont. Status Hr'g at ¶ 7, ECF No. 12, without also noting
the exclusion provided for pending pretrial motions, under 18 U.S.C. § 3161(h)(1)(D).

*Holmes*, 508 F.3d at 1095.  At a hearing on the government's motion six days after the motion

was filed, the trial judge deferred decision until after ruling on the defendant's motion because, if

the latter motion were granted, the government's motion would be moot.  *Id*.  The court did not

decide the defendant's motion for over six months and that decision did, in fact, moot the

government's motion.  *Id*. at 1095–96.  Nonetheless, the D.C. Circuit determined that the speedy

trial clock was tolled "based on" the government's pending motion from the time it was filed

until the motion was mooted, *id*. at 1092, even though the *Bruton* motion was the primary focus.

That a government detention motion made orally and placed on the backburner while

other proceedings occupy the court's and parties' attention can insulate lengthy delays from STA

scrutiny may seem to run contrary to the STA's central purpose.  Indeed, legislative history

reflects concern that the pretrial motions exclusion might swallow the whole STA.  S. Rep. No.

96-212, at 34 (1979) ("[T]his provision could become a loophole which could undermine the

whole Act."); H.R. Rep. No. 96-390, at 10 (1979), *reprinted in* 1979 U.S.C.C.A.N 805, 814

(recognizing the possibility of "potentially excessive and abusive use of [the] exclusion").

Nonetheless, Congress elected to leave the solution to that possible problem for "circuit

guidelines," S. Rep. No. 96-212, at 34, promulgated under 18 U.S.C. § 3165, which requires

district courts to prepare and adopt STA plans that "may be accompanied by guidelines

promulgated by the judicial council of the circuit . . . ," 18 U.S.C. § 3166(f).  *See also* H.R. Rep.

No. 96-390, at 10 (explaining Congress' hope that any abuse of the exclusion would be

prevented by "district or circuit guidelines, rules, or procedures relating to motions practice"); 18

U.S.C. § 3166(a) (compelling courts to include "procedural techniques, innovations, systems and

other methods . . . to expedite the trial or other disposition of criminal cases" in their STA plans);

*United States v. Robertson*, 810 F.2d 254, 261 (D.C. Cir. 1987) (acknowledging that

18

*Henderson*'s footnote stating that "[i]t would be useful in the future for circuit and district court rules to include specific timetables, thereby giving substance to the obligations of prosecutors and defense counsel under the [STA]," *Henderson*, 476 U.S. at 328 n.9, was "a plea to local courts to clarify their rules."). This Court's Speedy Trial Plan, last updated in 2002, does not address the situation in the instant case. *See generally* Speedy Trial Plan of the United States District Court for the District of Columbia, https://www.dcd.uscourts.gov/sites/dcd/files/Speedy-Trial-Plan2010.pdf; D.D.C. Crim. R. 45.1 (incorporating Court's Speedy Trial Plan).

Part of the responsibility for ensuring the government pursues a speedy trial—or in this case a speedy indictment—is thus in the hands of the courts. Avoiding the dismaying situation that a pending motion might insulate otherwise inexcusable delay may be easily accomplished by denying the motion without prejudice and allowing renewal of the motion upon completion of the other proceedings that prevent its prompt disposition. Ensuring clarity of the record on calculating STA time periods and the applicability of all relevant automatic statutory exclusions for periods of delay is critical for notice to the government and the defendant of any looming STA issues and, in the situation that arose here, to alert defendants when an unresolved pending motion may mean lengthy delays that will not be actionable under the STA. In this regard, parties may be asked to "stipulate as to whether a given motion would be excluded from the speedy trial clock." *Tinklenberg*, 563 U.S. at 658. In cases of extreme delay in pre-indictment proceedings before the magistrate judge, recommendations may be made to the Chief Judge for dismissal of the complaint, under the Federal Rules of Criminal Procedure 48. *See* Fed. R. Crim. P. 48(b) ("The court may dismiss [a] . . . complaint if unnecessary delay occurs in . . . presenting a charge to a grand jury . . . .").

Although courts must be vigilant in protecting a defendant's STA rights, ensuring prompt and fair process is also the government's responsibility.  The inability of components of the U.S. Department of Justice ("DOJ"), including the USMS, BOP and the U.S. Attorney's Office, to execute court orders related to competency examinations, treatment, and restoration in a reasonably timely and prompt fashion is deeply troubling.  This District has witnessed significant delays in the transfer of defendants to designated BOP facilities for competency-related examinations. According to the government's representations in this case, "there are only <u>two</u> primary facilities [that] receive the bulk of psychiatric referrals" for competency restoration. Gov't Req. at 20 (emphasis in original); *see also* Oct. 7 MJ Hr'g at 13–14 ("[T]here are two facilities in the United States . . . that are receiving the majority of the defendants who are receiving competency restoration.").  Those facilities are FMC Butner, in North Carolina, and USMCFP Springfield, in Springfield, Missouri.  Gov't Req. at 20.  At least one other facility, in Englewood, Colorado, is available to conduct competency evaluations, but the government has not clarified how many other facilities are qualified to perform those evaluations.  Forensic Eval. at 1 (explaining that the defendant's evaluation was completed at FCI Englewood).  The lack of bed space at these BOP facilities contributes to the delay.  Gov't Reply to Def's Opp'n to Gov't Req. at 10–11, ECF No. 29.  Since none of those facilities is in the District of Columbia or even near this metropolitan region, delays in gaining entry to those facilities are only compounded by transportation issues.

Transporting defendants out of state takes time enough, let alone when those facilities lack available bed space to service all 94 judicial districts across the country. Short of adding additional beds at BOP facilities for competency-related forensic examinations, use of local facilities and medical professionals may be the only viable alternative.  When this Court uses

local forensic psychologists, things go much more smoothly, as this case amply demonstrates. *Compare* Forensic Screening Report at 1 (stating that the forensic screening, ordered on April 17, was completed on April 19, with report submitted three days later on April 22) *with* Forensic Eval. at 1 (noting that the evaluation was ordered on April 23 but report filed with the magistrate judge 105 days later on August 6) *and* Competency Restoration Order (made on August 14 and, after 54 days lapsed without execution, case dismissed).

Until DOJ makes appropriate contractual arrangements for the use of local forensic medical expertise for competency-related examinations, the government must do a better job informing defense counsel and the Court of the whereabouts of any defendant subject to court-ordered evaluation and treatment.  Only after a hearing on this motion, and over a month after the defendant filed his motion to dismiss for STA violations, did the government file the USMS Individual Custody and Detention Report that precisely tracks the defendant's movements to and between various BOP facilities and even counts the days the defendant spent at each facility.  *See* USMS Rep. at 2.  Such reports may have to be filed periodically (*e.g.,* every three days) so that defense counsel and the Court are no longer caught off guard when defendants, who have been committed to the Attorney General's custody for examination or treatment, are instead discovered to be languishing in jail.

As it stands, the filing of a pretrial motion that requires a hearing stops the speedy trial clock through the hearing.  The defendant relies on an unpublished order by another Judge on this Court that has held otherwise in similar circumstances challenging compliance with the 70-day STA trial clock for an indicted defendant. Def.'s Opp'n to Gov't's Amended Req. for Review of Magistrate Judge Robinson's Order of Dismissal with Prejudice ("Def.'s Opp'n") at 7, ECF No. 24 (relying on *United States v. Phinizy*, No. 18-cr-323, ECF No. 29 ("*Phinizy*

Order") (D.D.C. Mar. 18, 2019) (Berman Jackson, J.)).  There, the magistrate judge deferred

resolution of a pretrial detention motion "pending the outcome of the competency evaluation,"

but the continuing pendency of that detention motion was found not to stop the speedy trial

clock, because "the delays in transporting defendant for his competency evaluation did not

'result from' the pendency of the motion for pretrial detention."  *Phinizy* Order at 3.  The court

interpreted the language in *Tinklenberg* that subsection (h)(1)(D) "is best read to instruct

measurement of the time actually consumed by consideration of the pretrial motion," *id*. (quoting

*Tinklenberg*, 563 U.S. at 656), to require the delay be sourced to a specific motion and, since

"the two were entirely separate motions," no delay could be excluded for the detention motion.

In context, however, the quoted *Tinklenberg* language means something far different than

the *Phinizy* interpretation.  In rejecting the appellate court's view "that a pretrial motion falls

within this exclusion only if it actually causes a delay, or the expectation of a delay, of trial," 563

U.S. at 650 (internal quotations, citations, and alterations omitted), the Supreme Court examined

subsection (h)(1)(D) to stress, in the sentence immediately preceding the quoted *Tinkleberg*

language, that the text "nowhere . . . mention[s] the date on which the trial begins or was

expected to begin."  *Id*. at 656.  Against that backdrop, the quoted *Tinklenberg* language meant

the focus should be on time consumed by the pendency of the pretrial motion, i.e. the time

between the filing of a motion and a hearing thereon, not on other factual contingencies like the

number of days consideration of a motion actually set the trial date back.  Indeed, the Supreme

Court rebuffed the call for a causal analysis similar to the one pressed by the defendant both in

*Phinizy* and here.  The *Tinklenberg* Court held that trial courts need not inquire into whether a

particular proceeding actually resulted in postponement of the trial.  *Id*. at 660.  In doing so,

*Tinklenberg* adopted a reading of the statute that neutered any causal analysis, explaining that

22

Congress included the phrase "delay resulting from" before describing each excludable period of delay not to require the "judge to determine causation, but because, in a close to definitional way, the words embody Congress' own view on the matter." *Id*. at 655.  In other words, Congress believed that pretrial motions—at least the ones requiring a hearing—cause delay from the time they are filed until they are heard and made that time period "automatically" excludable. *Id*.

Accordingly, under *Tinklenberg*, the speedy trial clock was stopped during the pendency of the detention motion.

### 2.    Any Time After August 14 Incompetency Determination Is Excluded Under Subsection 3161(h)(4).

The government's reliance on subsection (h)(1)(D) to exclude time after the defendant was found incompetent on August 14 is on shakier ground.  The parties agreed, on April 23, to continue the detention hearing until the defendant's competency to stand trial was determined. Min. Entry (Apr. 23, 2019).  After finding the defendant incompetent, the magistrate judge committed the defendant to the custody of the Attorney General so that he could be treated and possibly restored to competence.  At that point, as the defendant rightly points out, "the government's motion for pretrial detention was rendered moot"—the defendant was detained and both the parties and the magistrate judge were likely operating on the assumption that disposition of the detention motion was no longer necessary.  Def.'s Opp'n at 5.  Thus, whether any period of delay following the competency hearing should be excluded under subsection (h)(1)(D) is not crystal clear.  *See Holmes*, 508 F.3d at 1096 (excluding time between the filing of a motion and the completion of proceedings that mooted that motion).

That question is not dispositive, however, because the period of delay following the finding that the defendant was incompetent is excludable for another reason.  The STA instructs

that "[a]ny period of delay resulting from the fact that the defendant is mentally incompetent"

"shall be excluded."  18 U.S.C. § 3161(h)(4).  The defendant concedes that subsection (h)(4) is

relevant, but argues that any exclusion under this subsection is cabined by subsection (h)(1)(F),

which, among other things, excludes only up to ten days of delay while the defendant awaits

"transportation . . . to and from places of examination or hospitalization."  Def.'s Opp'n at 11

(citing 18 U.S.C. § 3161(h)(1)(F)).  Thus the defendant would not read subsections (h)(1)(F) and

(h)(4) as independent bases for exclusion but as operating in tandem.  The text and structure of

the statute, however, do not support that reading.  Notably, subsection (h)(1)(A), which is the

other STA exclusion that references competency, requires that the defendant be in

"proceeding[s] . . . to determine . . . mental competency."  18 U.S.C. § 3161(h)(1)(A).  Likewise,

the transportation exclusion in subsection (h)(1)(F), by virtue of being placed under (h)(1), also

must be tied to "delay resulting from other proceedings." 18 U.S.C. § 3161(h)(1).  By contrast,

subsection (h)(4) does not demand that the period of delay be related to any "proceeding" with

respect to the defendant's mental health.  *Compare* 18 U.S.C. § 3161(h)(1)(A) *with* 18 U.S.C.

§ 3161(h)(4).  To the extent that subsection (h)(1)(A) requires ongoing proceedings to be

triggered, the conspicuous lack of any such requirement in subsection (h)(4) confirms that all

time after a finding of incompetence is excludable, regardless of whether any effort is being

made to restore competence.

  Legislative history supports reading the statute as automatically excluding all time after a

finding of incompetence.  In comparing the two STA exclusions that reference a defendant's

competency, the Senate Judiciary Committee Report supporting congressional adoption of the

STA notes that subsection (h)(1)(A) "provides for the exclusion of time consumed in

competency hearings and a reasonable number of hospital days actually consumed by physicians

in mental examination." S. Rep. No. 93-1021, at 37–38 (1974). By contrast, "once the defendant is determined incompetent the only consideration is his return to competency" and thus "[t]he length of time required for him to do so obviously should not be the basis of a speedy trial claim." *Id*. at 38.

The legislative choice to exclude all time when a defendant is deemed incompetent is understandable. As the Supreme Court has recognized time and again, "the criminal trial of an incompetent defendant violates due process." *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996) (*quoting Medina v. California*, 505 U.S. 437, 453 (1992)). Thus, it would make little sense for the STA, which is concerned with ensuring defendants are promptly tried, to penalize the government for failing to indict and bring to trial a defendant who could not constitutionally be tried in the first place.[12]

Although the D.C. Circuit has not squarely addressed the question confronted here, several other circuits have. Each one has found that after a defendant is found incompetent to stand trial, all time is excludable whether or not the defendant's transportation to a facility for competency restoration is delayed. *See, e.g., United States v. Pendleton*, 665 F. App'x 836, 839 (11th Cir. 2016) (unpublished) ("[I]f a defendant is mentally incompetent under § 3161(h)(4), that time is excludable even if there is also a transportation delay that is unreasonably long and thus not excludable under § 3161(h)(1)(F)"); *United States v. Romero*, 833 F.3d 1151, 1155 (9th

---

[12]      Pursuing criminal charges against an incompetent defendant in federal court may, as the government stated at the motion hearing, be in service of public safety, Oct. 25 CJ Hr'g at 5, but also potentially transfers long-term care for the defendant from local to federal authorities. If the defendant cannot be restored to competency, proceedings for further civil commitment will occur outside this District, where the BOP medical facility housing the defendant is located, and the Attorney General will continue to maintain custody of the defendant likely at that facility, despite the fact that familial and other support systems used by the defendant are located in this District, since the State or local jurisdiction of the defendant's domicile may be unwilling to assume responsibility for the defendant, under 18 U.S.C. § 4246(d). *See Seth v. District of Columbia*, No. 18-cv-1034, 2018 WL 4682023, at *1 (D.D.C. Sept. 28, 2018) (dismissing complaint brought by incompetent D.C. resident charged in federal criminal complaint with production of child pornography requesting the District of Columbia take custody of him instead of remaining civilly committed at BOP facility in North Carolina); *Seth v. District of Columbia*, No. 18-cv-1034, 2019 WL 2058670, at *1 (D.D.C. May 8, 2019) (denying motion for reconsideration).

Cir. 2016) ("[T]he Speedy Trial Act unambiguously requires the exclusion of all time during which a defendant is incompetent to stand trial. . . . [O]ther delays that may or may not occur during a period of incompetence are irrelevant to the Speedy Trial Act calculation.").

The defendant relies on *United States v. Sparks*, which presented circumstances similar to those in this case.  885 F. Supp. 2d 92 (D.D.C. 2012) (Walton, J.).  An indicted defendant had been declared incompetent and was ordered to a federal facility for competency restoration, but the USMS did not receive the order to transport the defendant until over a month after the order was entered, during which time the defendant remained detained.  *Id*. at 94–95.  The defendant then moved to dismiss the case for violations of his STA rights.  The government responded by arguing that subsection (h)(4) applied automatically to exclude all time following the incompetence determination, regardless of whether the delay was mostly due to a failure to transport the defendant.  *Id*. at 97, 100–01 (citing *Tinklenberg*, 563 U.S. at 655).  The court disagreed stating that "while an excludable event need not cause an actual delay to be applicable, a given exclusion must actually be the cause of the excludable event to be applicable."  *Id*. at 101.  This explanation suggests that when an exclusion is applied, the court or parties must in fact be engaged in the action contemplated by the exclusion.  The court thus concluded that because "the delays . . . were caused by (i.e., resulted from) a failure to transport the defendant to FMC Butner for court-ordered psychiatric treatment," as opposed to the defendant's incompetence to stand trial, subsection (h)(1)(F) governed and the defendant's rights under the Act had been violated.  *Id*.

Despite the appeal of *Sparks'* reasoning, this Court's reading of binding precedent dictates a different result.  The Supreme Court recognized in *Tinklenberg* that a period of delay may have more than one cause and expressly rejected an interpretation of the pretrial motion

exclusion that would impose on courts an obligation to parse out which events are responsible for which delays. *Tinklenberg*, 563 U.S. at 658; *see also Henderson*, 476 U.S. at 330 (excluding over four months of time when a pretrial motion was pending without inquiring into what, of that time, was spent actually considering the motion). Specifically, the *Tinklenberg* Court explained that requiring a judge to "decide" "motion by motion . . . which motions were responsible and which were not responsible" for delay would be significantly more difficult to administer and would "significantly hinder the [STA]'s efforts to secure fair and efficient criminal trial proceedings." *Tinklenberg*, 563 U.S. at 657–58. Moreover, the Supreme Court reiterated that the contention had already been rejected "that the exclusion provision for pretrial motions governs only reasonable delays," *id.* at 659 (citing *Henderson*, 476 U.S. at 327), stressing that this exclusion applies automatically, *id.*

Nor does this Court's reading of the statute render any part of the STA "mere surplusage." *Sparks*, 885 F. Supp. 2d at 101 (*citing United States v. Noone*, 913 F.2d 20, 26 n.5 (1st Cir. 1990)). The *Sparks* Court determined that subsection (h)(1)(F)'s reference to transportation "to and from places of examination or hospitalization" would be read out of the statute if (h)(4) were construed to exclude any time an incompetent defendant awaited transportation. For one, the reference in subsection (h)(1)(F) to "hospitalization" is significantly broader than just hospitalization for restoration to competence. A defendant may fall ill while detained and need to be transported for medical attention and, in that circumstance, standing alone, the time used for transportation would be subject to (h)(1)(F). Furthermore, subsection (h)(1)(F) still acts as a limit to excludable transportation delays in connection with competency evaluations covered by subsection (h)(1)(A), as several courts have held. *See, e.g., United States v. Williams*, 917 F.3d 195, 202 (3d Cir. 2019); *United States v. Tinklenberg*, 579 F.3d 589, 596

27

(6th Cir. 2009), *aff'd on other grounds*, 563 U.S. 647 (2011); *Noone*, 913 F.2d at 25–26; *United States v. Castle*, 906 F.2d 134, 137 (5th Cir. 1990); *but see United States v. Vasquez*, 918 F.2d 329, 333 (2d Cir. 1990).[13]

Accordingly, this Court holds that upon a declaration that a defendant is incompetent, subsection (h)(4) excludes all periods of delay thereafter "in computing the time within which an information or an indictment must be filed." 18 U.S.C. § 3161(h).[14]

---

[13]        The parties have principally focused their arguments on the 41-day period after the magistrate judge's August 14 competency hearing and determination, with only cursory attention given to the 119 days between the defendant's April 17 initial appearance and August 14.  Although that time period is excluded under subsection (h)(1)(D), *see supra* Part III.B.1, the parties' alternative arguments merit brief mention.  In this regard, the government argues that this entire period was consumed by "proceeding[s] . . . to determine the mental competency of the defendant."  Gov.'s Req. at 5 n.2 (citing 18 U.S.C. § 3161(h)(1)(A)).  Certainly, subsection (h)(1)(A) excludes the time between April 17, when the magistrate judge ordered a forensic screening, and the prompt resolution of that screening on April 22, and neither party argues otherwise.  The defendant contends, however, that the 38 days between the April 23 Competency Evaluation Order and his arrival at FCI Englewood were consumed by transportation delays that are governed by subsection (h)(1)(F).  Oct. 25 CJ Hr'g 29–30; *see also* Def.'s Opp'n at 13–14 (characterizing that delay as "unreasonable").  That position has support, *see, e.g.*, *Williams*, 917 F.3d at 202; *Tinklenberg*, 579 F.3d at 596; *Noone*, 913 F.2d at 25–26; *Castle*, 906 F.2d at 137, but would only account for 28 days on the thirty-day STA clock, because ten of the 38 days of transportation delay are automatically excused under subsection (h)(1)(F).  The parties then correctly treat the time following the defendant's arrival at FCI Englewood until the August 14 competency hearing and determination as excludable under subsection (h)(1)(A).  *See* Def.'s Consent Mot. to Cont. Status Hr'g ¶ 4, ECF No. 9 (noting that the "thirty days" between June 18 and July 18 are "automatically excluded" under subsection (h)(1)(A)); Gov't's Consent Mot. to Cont. Status Hr'g ¶ 7, ECF No. 12 (noting that the "time period" between July 18 and Aug. 14 is "automatically excluded" under "[subs]ection 3161(h)(1)(A)"); Def.'s Opp'n at 13–14 (contending that the defendant "experienced two unreasonable transportation delays"—the first while waiting to be transported to his evaluation and the second while waiting to be transported to FMC Butner for competency restoration).  In other words, construing the time between the April 17 and August 14 in the light most favorable to the defendant thus produces a speedy trial calculation of exactly 28 days and no STA violation for that period warranting dismissal of the complaint.

[14]        While the STA does not afford a remedy for significant delays in executing court orders committing an incompetent defendant to the custody of the Attorney General for competency restoration, other remedies may be available.  Extraordinarily lengthy delays in execution of such a court order may ultimately result in prejudice to the defendant's trial rights and, in rare circumstances, be subject to analysis under the broader protections of the Sixth Amendment's speedy trial guarantee.  *Rice*, 746 F.3d at 1081 ("The absence of a Speedy Trial Act violation does not *ipso facto* defeat a Sixth Amendment speedy trial claim."); 18 U.S.C. § 3173 ("No provision of [the STA] shall be interpreted as a bar to any claim of denial of speedy trial as required by amendment VI of the Constitution.").  Moreover, the Constitution does not tolerate the indefinite incarceration of a mentally incompetent person without the provision of any treatment.  *See DeShaney v. Winnebago Cty. Dep't of Social Servs.*, 489 U.S. 189, 199–200 (1989) ("[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being."); *Youngberg v. Romeo*, 457 U.S. 307, 319 (1982) (suggesting that when an incompetent person is confined by the State, he is owed "minimally adequate care and treatment").

## IV.    CONCLUSION

The magistrate judge was without authority to dismiss the criminal complaint against the defendant for perceived violation of his right, under the STA, to be indicted within thirty days of his arrest.  Thus, her dismissal order must be vacated.  Construing the magistrate judge's decision as a recommendation for dismissal, the Court concludes that the delays between the defendant's arrest and his motion to dismiss were excludable under the STA and, consequently, his rights thereunder were not violated.  Accordingly, the magistrate judge's dismissal decision is vacated and the criminal complaint against the defendant is reinstated.

A separate order will be entered contemporaneously reflecting this decision.

Date:  November 6, 2019

_____
**BERYL A. HOWELL**
Chief Judge