UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Magistrate No.: 19-MJ-100 |
| | : | |
| PETER BELER | : | |
| Defendant. | : | Detention Hearing:  November 12, 2019 |
| | : | |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF
## PRETRIAL DETENTION OF DEFENDANT PETER BELER

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, submits this memorandum in support of its request that defendant Peter Beler be detained pending the trial of this matter pursuant to 18 U.S.C. § 3142(f)(1)(A), because the offense involved a crime of violence, pursuant to 18 U.S.C. § 3142(f)(1)(E) because this offense involved minor victim, and because there is no condition or combination of conditions that will reasonably assure the safety of any person and the community.  The defendant has been charged by Criminal Complaint in the District of Columbia with one count of Distribution and Receipt of Child Pornography, in violation of Title 18 United States Code Section 2252(a)(2).  An analysis of the factors set forth in 18 U.S.C. § 3142 below leads to the conclusion that detention is appropriate, especially given the applicable presumption of detention.

### FACTUAL BACKGROUND

In March 2019, an Undercover Employee (UCE) used a law enforcement tool to review a list of Internet Protocol ("IP") addresses that (1) had been recorded as sharing suspected child pornography images or videos, identified by their unique SHA1 hash values, on a peer-to-peer ("P2P") file sharing network; and (2) were believed to resolve back to physical addresses located

1

in the District of Columbia based on a commercial geolocation program utilized by the law enforcement tool. An IP address is unique to a particular computer during an online session and makes it possible for data to be transferred directly between computers. The law enforcement tool indicated that the IP address 216.15.18.105 ("Subject IP Address") was used to share known child pornography images and/or videos and that the computer using that IP address was physically located in the District of Columbia. On March 5, 2019, a UCE used a P2P software client program to connect directly to the Subject IP Address, which had multiple files being shared on the P2P file sharing network. The UCE initiated downloads from the Subject IP Address and partially or completely downloaded multiple files containing suspected child pornography stemming from the Subject IP Address. Examples of the downloaded files are the following:

a) The file identified as "12152648770144b.jpg" contains an image file that depicts a nude infant lying on her back. An adult's penis is seen near the girl's genitals and what appears to be ejaculate is seen on the girl's torso and genitals. This image is located in a subfile titled "Cum Babies".

b) The file identified as "20050601082847r.jpg" contains an image file that depicts a nude adult woman lying on her back and holding a nude toddler girl over her face. The woman is licking the toddler's genitals. This image is located in a subfile titled "Toddler PTHC extremely 0 – 10yo 2008".

c) The file identified as "4yo_goddess05.jpg" contains an image file that depicts a toddler with an adult's penis in her mouth. This image is located in a subfile titled "!!! NEW 616 babypics - mixed&sorted".

Law enforcement queried the America Registry for Internet Numbers (ARIN), which

manages the distribution of IP addresses for the United States, and determined that the Subject IP Address is associated with RCN, an Internet Service Provider.

On or about April 2, 2019, pursuant to an administrative subpoena, RCN revealed that on the date and during the time of the downloads described above, the Subject IP Address was assigned to subscriber Peter Beler (referred to hereinafter as BELER) for internet service provided to the service address of XXX New Hampshire Ave NW Apt XXXX, Washington, DC 20037.

On or about April 2, 2019, open source and law enforcement sensitive data base searches indicated BELER resided at XXX New Hampshire Ave NW Apt XXXX, Washington, DC 20037 and appeared to be the sole resident of that apartment.

On April 4, 2019, the General Manager for XXX New Hampshire Ave NW, Washington, DC, confirmed that BELER was listed as a resident of Apartment XXXX at that address.

On April 17, 2019, a search warrant issued by your honor was executed at XXX New Hampshire Ave NW Apt XXXX, Washington, DC 20037. During the execution of the search warrant, BELER opened the front door to his apartment. He was removed to the hallway of the apartment building while law enforcement worked to clear the apartment. Law enforcement cleared the apartment and, in doing so, established that BELER was the only person who had been in the apartment at the time the search warrant was executed.  After the apartment was cleared, law enforcement observed that BELER currently had multiple electronic devices, including a computer, hooked up to his television screen and was using his television screen as a monitor for these devices, including  the computer.  The computer was running a torrent program and the file names being downloaded and/or uploaded were clearly visible on the television screen to law enforcement. Multiple file names visible on the screen were indicative of child pornography, including files that included terms such as "pedo" in the file name and names of child pornography

series known to law enforcement. After observing these file names, law enforcement did an initial manual search of the computer. This search indicated that there were active torrent file uploads and downloads. Moreover, an initial search of a desktop folder revealed more than 2000 files of suspected child pornography depicting pre-pubescent children. An initial search of an associated cloud account revealed thousands of additional images and videos of child pornography.

After the apartment was cleared, but while the search was ongoing, BELER was brought back into the apartment and seated in a bedroom with law enforcement. BELER was told at that point that he was not under arrest and not required to speak to law enforcement. BELER identified himself, acknowledged that he was the only person who lived in the apartment and stated that he rarely leaves the apartment or receives visitors. BELER stated he did not wish to talk further. Later, however, BELER chose to speak with law enforcement again, and stated that he has been using bit torrent sites for years for non-pornographic movies. He stated that he obtained a VPN and began to explore the dark web a few months ago. He indicated that everything in the apartment was synchronized and run from the computer located in the bedroom. He acknowledged searching for child pornography, and viewing child pornography of children as young as babies. He also acknowledged using torrent sites and downloading child pornography, deleting some files while keeping others, but he denied distributing child pornography. He provided information regarding various electronic devices, including which of the eighteen (18) electronic devices recovered he alleged did and did not have child pornography, which he referred to as "bad files" on them. BELER was arrested on April 17, 2019 and charged by complaint with one count of Recepit and Distribution of Child Pornography.

Subsequent to Mr. Beler's arrest, law enforcement began forensic review of the devices recovered. Some were encrypted and/or password protected in a manner that the forensic examiner

was unable to gain entry. However, the examiner was able to gain entry into multiple devices and located numerous additional videos, images, and bit torrents of apparent child pornography on multiple devices, including in deleted file folders. Also located were anti-forensic programs, such as CCleaner, which can be used to permanently delete file and windows registry entries from a computer.

A preliminary hearing was held on April 22, 2019 at which time the presiding Magistrate Judge, your honor, found probable cause. The case was ultimately dismissed by your honor for a Speeedy Trail Act violation. However, on November 6, 2019, the dismissal was vacated by Chief Judge Beryl Howell, and the complaint was reinstated. On that same day an arrest warrant was issued by the court for Mr. Beler's arrest, and he was arrested on the morning of November 7, 2019 in a hotel in Arlington, VA, and made his initial appearance in this court that same day.

At or around the time of the execution of the arrest warrant, law enforcement spoke to a head of security at the hotel at which Mr. Beler was staying in Virginia. The security head informed them that one of his hotel employees had recently come to him with concerns about Mr. Beler, including that they may have seen child pornography in his room. Law enforcement subsequently spoke to this employee and she said when she was delivering something to Mr. Beler hotel room, she observed a paused t.v. screen showing a sadomasochistic scene featuring either a woman or a girl. She said she could not be sure because the face was covered by a mask but the very petite size of the body and breasts gave her pause. She said she was so uncomfortable with what she saw that she notified the head of security and refused to back up to Mr. Beler's room by herself.

At the time law enforcement was executing the arrest warrant, they observed a sophisticated electronic setup similar to that observed in his home residence at the time of the execution of the initial search warrant in this case. That is to say, Mr. Beler appeared to have

multiple electronic devices chained or plugged into a central source and utilizing the television as a monitor. After Mr. Beler was arrested, the hotel secured Mr. Beler's room, law enforcement ultimately obtained and executed a search and seizure warrant, seizing several electronic devices. Forensic review of these devices is ongoing.

## APPLICABLE LEGAL STANDARD

The Bail Reform Act permits a judicial officer to hold an individual without bond pending trial if the officer finds clear and convincing evidence that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). Pursuant to 18 U.S.C. § 3142(f)(1)(A), the judicial officer shall hold a hearing on the question of detention upon the motion of the government in a case that involves a crime of violence.

The crimes of Distribution of Child Pornography and Receipt of Child Pornography, in violation of Title 18 United States Code Section 2252(a)(2) are each a crime of violence and involving a minor victim, which under 18 U.S.C. § 3142(e)(2) & (3)(E) creates a rebuttable presumption that the defendant constitutes a danger to the community, and that no pretrial release condition or combination of conditions may be imposed to assure the safety of any other person and the community.  This presumption "operate[s] at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985); *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985) (observing that the presumptions in § 3142(e) "are rebutted when the defendant meets a burden of production by coming forward with some evidence that he will not flee or endanger the community if released").

In determining whether the defendant has overcome that presumption, the Court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g). Even when the defendant has offered evidence to rebut the presumption of dangerousness, the presumption remains a factor in the court's analysis of the § 3142(g) factors. *See United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1983) ("Use of that word [rebutted] in this context is somewhat misleading because the rebutted presumption is not erased. Instead it remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)."). As the Sixth Circuit has observed, "[t]he presumption [of dangerousness] remains as a factor because it is not simply an evidentiary tool designed for the courts. Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *United States v. Stone*, 608 F.3d 939, 945-46 (6th Cir. 2010) ("To rebut the presumption, therefore, a defendant should 'present all the special features of his case' that take it outside 'the congressional paradigm.'").

## ANALYSIS

For the reasons that follow, the government submits that that the defendant cannot rebut the presumption that he shall remain detained, as there is no condition or combination of conditions that will reasonably assure the safety of any other person and the community.

### A.     The Nature and Circumstances of the Offense Charged

The defendant in this case is charged with distributing and receiving child pornography. This is a violent offense, as defined by Congress in 18 U.S.C. §3156(a)(4)(C) that carries a

mandatory minimum term of imprisonment of five years for a violation. As many courts have recognized, "[It is an] undeniable fact that real children are actually being abused and violated when pornographic images are made. Without a market for such images, and without a strong appetite for more and more images exhibited by [defendant] and similarly situated defendants, there would be far fewer children who are injured and criminally assaulted in this way." United States v. Miller, 665 F.3d 114, 123 (5th Cir. 2011).

The particular facts of this case are also disturbing. Defendant was not merely an average trafficker of child pornography; he did not simply distribute a small number of images to a single undercover agent. Rather, through a peer-to-peer software client program, Defendant distributed to an agent and made available to all online users numerous files depicting children as young as infants and toddlers being sexually abused and possessed thousands and thousands of child pornography files. At the time agents executed the initial search warrant on Defendant's apartment, they observed the Defendant in the process of bulk distribution (and receipt) of these images:

> [Defendant's] computer was running a torrent program and the file names being downloaded and/or uploaded were clearly visible on the television screen . . . . Multiple file names visible on the screen were indicative of child pornography, including files that included terms such as "pedo" in the file name and names of child pornography series known to law enforcement. After observing these file names, law enforcement did an initial manual search of the computer. This search indicated that there were active torrent file uploads and downloads. Moreover, an initial search of a desktop folder revealed more than 2000 files of suspected child pornography depicting pre-pubescent children. An initial search of an associated cloud account revealed thousands of additional images and videos of child pornography.

Complaint, Statement of Fact (Dkt. 1-1) at 2-3.

This distribution was also not accidental or a one-time event. Rather, it involved a sophisticated setup, wherein the defendant would link multiple electronic devices together

(including "RAIDing" hard drives), run all of the devices through a computer in his bedroom, and utilize his t.v. screen as a monitor for multiple devices. He used more than one bittorrent site, and took several steps to avoid detection, including deleting files, installing CCleaner, which can be used to permanently delete file and windows registry entries from a computer, and by his own admission also used VPNs and dark web browsers to search for files. This factor weighs in favor of detention.

### B.     The Weight of the Evidence Against the Defendant

As summarized above, the evidence against the defendant is overwhelming, including irrefutable electronic and evidence of distribution and receipt observed by agents in real time during the execution of the search warrant in the form of active bittorrent uploads and downloads. The defendant further admitted searching for child pornography, and viewing child pornography of children as young as babies. He also acknowledged using torrent sites and downloading child pornography, conduct which in and of itself would constitute a violation of Section 2252(a)(2) (Receipt of Child Pornography), which triggers the five year mandatory minimum. Finally, any argument that the defendant did not know that he was distributing child pornography through bit torrent sites at the same time as he knew he was receiving it is undermined by his evident technological sophistication, his use of multiple bit torrent sites over a period of years by his own admission, and the setup of the bit torrent sites used that a) make clear in user agreements that that they access/share your files and b) clearly display uploads as well as downloads. This factor weighs in favor of detention.

### C. The History and Characteristics of the Defendant

The defendant has no prior conviction known to the government. He also has clear mental health issues and was found incompetent by this court on August 14, 2019. However, his actions in this case demonstrate someone who has a deep level of technological expertise and can utilize this to commit child pornography offenses. By his own admission, he had been committing these offenses for a period of months prior to being caught, and evidence shows he had amassed and concealed thousands and thousands of files of child pornography on multiple devices, including those featuring children as young as infants and toddlers. Indeed, the ability to determine the full extent of his criminal conduct has been limited by his technological sophistication, including the use of encrypted devices, utilizing the dark web, and ruling antiforensic programs such as C Cleaner.

It is undeniable that Mr. Beler suffers from mental health conditions and is in need of mental health treatment. However, as discussed below, his actions in committing this violent offense (as well has his apparent actions during the brief time he was on release) demonstrate that he cannot at present time be a part of the community and should remain in custody pending treatment.[1] This factor too weighs in favor of detention.

### D. The Nature and Seriousness of the Danger to Any Person or the Community

The evidence here establishes that the defendant represents a danger to the community – particularly to young people. It bears repeating that distribution and receipt of child pornography, through electronically-based, are violent crimes that that repeatedly victimize the

---

[1] As explained to defense counsel, Mr. Beler was removed from the transport list by JPATS when his case was originally dismissed in October. However, the undersigned has been working hard with BOP to try to ensure that he is able to regain his original place in line and his original estimated transportation date of early-mid December due to the unique circumstances of this case. The undersigned hopes to have a final approval on this by the time of the scheduled hearing on November 12, 2019.

children pictured and lead to more real children actually being abused and violated by creating, incentivizing, and perpetuating the market for such victimization. This is particularly true here where the defendant viewed uploaded and downloaded many child pornography files over a period of months and possessed thousands and thousands of child pornography files.

Moreover, the technological sophistication of the defendant in this case presents a further acute danger that could not be sufficiently constrained or monitored if he were released. This offense is electrically-based. As pretrial has said in numerous cases, even if they installed electronic monitoring/restricting software on a released defendant's devices, they could not ensure compliance in these types of cases because of the ubiquity and accessibility of electronic devices in the community. This is particularly true in Mr. Beler's case. Mr. Beler has demonstrated through his actions in the commission of this offense that he is capable of using sophisticated means to avoid detection, including his use of bit torrents, his use of VPNs, his use of encryption, his knowledge and use of undetectable browsers on the dark web, and his use of antiforensic programs such as C Cleaner. He has also demonstrated that he has the means and ability to recreate an advanced technological setup, as he did in his hotel room post-release. Finally, though the forensics are still pending on devices recovered from his hotel room after his November arrest, the statements of the hotel worker regarding what she saw on his screen at least indicate that he may have returned to his illegal child pornography activities during the brief period of time that he was released.

This factor, too, weights in favor of detention.

In sum, an analysis of the factors under 18 U.S.C. § 3142(g) demonstrates the defendant cannot rebut the presumption that he shall remain detained, as there is no condition or combination of conditions that will reasonably assure the safety of any other person and the community.

## **CONCLUSION**

For all of the reasons set forth above, and any other reasons set forth at any hearing on this issue, a consideration of the evidence in this case and the applicable statutory factors compels the conclusion that the defendant should be detained pending trial.

WHEREFORE, the government respectfully requests that the court grant its motion for detention of the defendant.

                                Respectfully submitted,

                                JESSIE K. LIU
                                UNITED STATES ATTORNEY

                                ___/s/_____
                                NICHOLAS MIRANDA
                                Assistant United States Attorney
                                D.C. Bar 995769
                                U.S. Attorney's Office
                                555 4th Street, N.W., Room 4-482
                                Washington, D.C. 20530
                                202-252-7011
                                Nicholas.Miranda@usdoj.gov