**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CASE NO. 19-CR-415 (CKK)** |
| | : | |
| **PETER BELER,** | : | |
| **Defendant.** | : | |

**GOVERNMENT'S REDACTED PROPOSED STATEMENT OF FACTS AND**
**CONCLUSIONS OF LAW**

The United States of America, by and through its attorney, the United States Attorney for

the District of Columbia, respectfully files this proposed statement of facts and conclusions of

law regarding the government's motion for forcible medication of Mr. Beler in order to restore

him to competency for trial pursuant to *Sell v. United States*. The United States relies on the

following points and authorities and such other points and authorities cited at hearing on the

government's *Sell* motion.

**PROCEDURAL HISTORY**

The defendant, Peter Beler, was arrested on April 17, 2019 and initially charged via a one

count complaint with Distribution and Receipt of Child Pornography in violation of 18 U.S.C. §

2252(a)(2). This charge stemmed from the defendant's alleged unlawful activities from March 5,

2019, until April 17, 2019.  According to the complaint and accompanying statement of facts in

support thereof (ECF No. 1), Mr. Beler distributed multiple child pornography videos, including

some featuring the graphic sexual abuse of infants and toddlers, to others on the internet via

bittorrent servers.  Moreover, when law enforcement officers executed a search warrant on his

residence prior to his arrest, the officers observed Mr. Beler apparently in the act of actively

distributing child pornography. As officers entered the apartment, titles indicative of child

pornography were visible as uploads and downloads on the screen of Mr. Beler's television that he was using as a monitor. The execution of the search warrant further revealed a disheveled apartment with a complex technological set up, and multiple electronic devices that when searched, revealed thousands of additional child pornography files.

Mr. Beler was interviewed at the time of search warrant execution. (Joint Hr'g Ex. 1). During this interview, he *inter alia* admitted to exploring the dark web for months prior to his arrest, searching for child pornography, viewing child pornography of children as young as babies, using a bittorrent client to download child pornography, and keeping some child pornography files while deleting others. He denied distributing child pornography.

The defendant made his initial appearance in the United States District Court for the District of Columbia in front of Magistrate Judge Deborah A. Robinson, on April 17, 2019, the same day as his arrest. At the Defendant's initial appearance, the Government made an oral motion for the Defendant's pretrial detention pursuant to 18 U.S.C. § 3142(f)(1)(A), which was granted, and the parties also jointly moved for a forensic screening of the Defendant, which was also granted. The forensic screening status hearing took place on April 22, 2019 and the preliminary hearing took place on April 23, 2019 concluding with a finding of probable cause. At the forensic hearing, the parties and the Court agreed to follow the initial screener's recommendation of further evaluation.

The case was then continued multiple times to allow for a full forensic competency evaluation. This evaluation was completed by Dr. Jessica Micono, Psy. D. of the Bureau of Prisons, on July 29, 2019 and filed with the court on August 6, 2019. (Joint Hr'g Ex. 6). The evaluation found that the defendant was incompetent ████████████████████████████████████████ ████████████████████████████████████ However, it also concluded that "the prognosis for restoration appears to be positive.████████████████████████████████████████

███████████████████████ (*Id.* at 14).  Dr. Micono recommended the Defendant be transferred to a federal medical center for competency restoration treatment pursuant to 18 U.S.C. § 4241(d).

Both parties and the Court agreed with this recommendation, and transfer for competency restoration was ordered.  However, due to a bed space and personnel shortage at the limited number of federal medical centers that perform competency restoration, the defendant's transfer was initially delayed.  The defense field a motion to dismiss for a Speedy Trial Act violation, which was initially granted by Magistrate Judge Robinson on October 7, 2019, and the defendant was temporarily released. However, this decision was vacated by Chief Judge Berryl Howell and the case and complaint was ordered reinstated on November 6, 2019. The defendant ultimately was transferred to FMC Fort Worth for competency restoration, where he presently resides and the government returned a three count indictment against Mr. Beler charging him with: Distribution of Child Pornography in violation of 18 U.S.C. § 2252(a)(2) (count one); Receipt of Child Pornography in violation of 18 U.S.C. § 2252(a)(2) (count two); and Possession of Child Pornography in violation of 18 U.S.C. § 2252(a)(4)(B) (count three).



Consistent with the Court's directive, Dr. Armstrong completed a forensic evaluation of the

defendant to report on his progress.  In this evaluation dated March 11, 2020 (Gov. Hr'g Ex. 1),

Dr. Armstrong concluded that ████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ (*Id.* at 10).

Likewise, Dr. Cuccio, a BOP psychiatrist, submitted a Forensic Addendum and Treatment Plan on

May 20, 2020 to supplement the forensic evaluation and provide a proposed treatment plan.  This

Forensic Addendum and Treatment Plan (Gov. Hr'g Ex. 4) was based on a review of Mr. Beler's

medical records, frequent conversations with Dr. Armstrong and other members of the BOP

medical staff, and multiple conversations she had with Mr. Beler over Video Tele Conference

(VTC). ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

    The Defense opposed involuntary medication, and the court granted a request for a *Sell*

hearing to determine whether the government had met the necessary standard for involuntary

medication of the defendant so that he may regain competency for trial. The Defense hired Dr.

George Corvin, M.D., as an expert. He met with Mr. Beler one time via VTC on July 2, 2020 and

wrote a report on the basis of this meeting as well as a review of the defendant's medical records

and selected portions of discovery made available to him in this case. (Def. Hr'g Ex. 2).

In this report, dated July 21, 2020, Dr. Corvin ███████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████ concluded that government was unable to meet

even a single one of the *Sell* criteria. (*Id.*)

The *Sell* hearing in this case took placed via video teleconference on five dates from August

4 through September 1, 2020. Drs. Armstrong and Cuccio testified on behalf of the government

and Dr. Corvin testified on behalf of the defense.

Dr. Armstrong testified as the treating psychologist assigned to Mr. Beler by the Bureau of

Prisons and an expert in the field. ███████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

Dr. Armstrong testified that Mr. Beler's current diagnosis is ███████████████████

████████████████████████████████████ She testified that ███████████████████

████████████████████████████████████ the goal of the forensic unit at BOP is "to reduce

an individual's symptoms enough to the degree that they can meaningfully participate in the process and proceeding and meaningfully participate in their defense." (Tr. 8/4/2020 at 43). ████

████████████████████████████████████████████████████████████████████

████████████████████████

Dr. Armstrong made clear that for competency restoration "we are looking…to reduce the symptoms of that mental illness that are impeding one's ability to go forward and assist in their defense." (*Id.*). This process "typically…entails medication and/or psychoeducation classes about the court proceeding, the court process in general." (*Id.* at 32). Further, if a patient "has acute symptoms at the time, they need to be treated or it's really difficult for them to engage with the other components of psychoeducation and application of that through the legal system." (*Id.*).

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████ (*Id.* at 38).

Dr. Cuccio testified as the treating psychiatrist assigned to Mr. Beler by the Bureau of Prisons and an expert in the field. She conceded that her preferred treatment method is in-person, but due to the Covid-19 Pandemic, she has been unable to meet with Mr. Beler in person. (Tr. 8/4/2020 at 112). However, she testified that she has met with him numerous times over VTC prior

to forming her conclusions. (*Id.*).  She further testified that she discussed Mr. Beler's progress with

Dr. Armstrong frequently, had multiple conversations with others on the treatment team, and

reviewed BOP records— ████████████████████████████ —prior

to reaching her conclusion.  (*Id.* at 122).  Finally, she ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████  ████████████████

████████████████████

      ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████She based this opinion on her interactions with Mr.

Beler, her conversations with Dr. Armstrong and others ████████████████, her review of the

records, literature, and her professional experience. (*Id*).  In fact, she testified that she rarely has

this much information on a patient, nor the "luxury to be able to go through it."  (Tr. 8/24/2020 at

183-84).  ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

      ████████████████████████████████████████████



Dr. Corvin testified as a private psychiatrist hired by the defendant to provide an opinion on *Sell* issues, and as an expert in the field. He testified that he had never met Mr. Beler in person, and only met with him one time via VTC for 1 hour and 40 minutes prior to forming his opinion. He testified that his opinion was based on his experience, this meeting, a review of the records, and a review of some discovery from the underlying criminal case that was provided to him by the Defense. However, he acknowledged that he had not spoken with any of the treatment staff that previously or currently was treating Mr. Beler, had not reviewed Mr. Beler's BOP medical records from 2019 or 2020, and had not reviewed the statement of facts or other additional pieces of discovery prior to forming this opinion. (Tr. 9/1/2020 at 85-90).

In his testimony, Dr. Corvin agreed with many aspects of the testimony of government

experts, but disagreed with their ultimate conclusions. ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████ ███████ █████ ██ █ ████ ████████ ████████ ██████ ███████ ██████ ██

██████████████████████████████ ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████

The testimony concluded on September 1, 2020. At the close of the testimony, this Court set a schedule for the parties to file proposed findings of fact and conclusions of law.

## APPLICABLE LEGAL STANDARD

"The due process liberty interest in avoiding unwanted ███████ medication may be 'significant,' but it is not absolute." *United States v. Weston*, 255 F.3d 873, 876 (D.C. Cir. 2001) (quoting *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997)).  In *Sell v. United States*, 539 U.S. 166 (2003), the Supreme Court put forth the applicable test for determining when a trial court may order such involuntary medication for the purpose of restoring a defendant to competency for trial. The involuntary administration of medication to restore competency is permitted when the trial court finds that: (1) "*important* governmental interests are at stake"; (2) "involuntary medication will *significantly further* those concomitant state interests," i.e., "administration of the drugs is substantially likely to render the defendant competent to stand trial," and "administration of the drugs is substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair"; (3) "involuntary medication is *necessary* to further those interests," i.e., "alternative, less intrusive treatments are unlikely to achieve substantially the same results"; and (4) "administration of the drugs is *medically appropriate*, i.e., in the patient's best medical interest in light of his medical condition." *Sell v. United States*, 539 U.S. 166, 180-81 (2003) (emphasis in original).[1]

The government bears the burden of satisfying each of the *Sell* requirements "by clear and convincing evidence." *See United States v. Dillon*, 738 F.3d 284, 291 (D.C. Cir. 2013).

---

[1] The Supreme Court's decision in *Sell* relied on *Washington v. Harper*, 494 U.S. 210 (1990), and *Riggins v. Nevada*, 504 U.S. 127 (1992). In *Harper*, the Court concluded that an individual's liberty interest in avoiding forced medication, though "significant," could be overcome by the important state interest in "providing appropriate medical treatment to reduce the danger that an inmate suffering from a serious mental disorder represents to himself or others." 494 U.S. at 221, 236. And in *Riggins*, the Court observed that, in addition to the governmental interest in mitigating an inmate's dangerousness, a state could forcibly medicate a defendant for the purpose of bringing him or her to trial. 504 U.S. at 135 ("[T]he State might have been able to justify medically appropriate, involuntary treatment with the drug by establishing that it could not obtain an adjudication . . . by using less intrusive means.").

For the reasons stated below, the Court finds that the government has met its burden. The Court will address each of the requirements under *Sell v. United States* in turn.

**The Government Demonstrated an Important Government Interest That Was Not Undermined by Any Relevant Special Circumstances**

First, this Court finds that the government has demonstrated an important government interest in bringing Mr. Beler to trial for the offense of Distribution of Child Pornography, based on the classification of the offense as a violent crime against children, the applicable punishment of 5-20 years imprisonment with a mandatory minimum of five years' imprisonment, and the facts of the underlying case. These interests are not undermined in this case by any special circumstances.

In *Sell,* the Supreme Court held that the Government's interest in bringing to trial an individual accused of a serious crime constitutes an important government interest, whether the offense is a serious crime against the person or a serious crime against property.   539 U.S. at 180. It cautioned, however, that courts must also consider the facts of the individual case in evaluating the government's interest and that special circumstances may lessen the importance of that interest. *Id.*   In this Circuit, this is properly treated as a two-part inquiry. "A court must first determine whether the charged crime is 'serious,' because the Government's interest in a prosecution generally qualifies as 'important' when the defendant is charged with a serious crime." *United States v. Dillon*, 738 F.3d 284, 292 (D.C. Cir. 2013). "Next, considering the specific facts of the case before it, a court must evaluate whether '[s]pecial circumstances ... lessen the importance of that interest." *Id.* Sell enumerates two examples of special circumstances: the prospect of lengthy civil confinement and an extended period of pretrial detention in light of the potential sentence. *See Id.*

In this case it is beyond any doubt that the offenses for which Mr. Beler has been indicted

are serious and thus that the Government has an important interest in his prosecution.  Mr. Beler was indicted on three felony counts, including Distribution and Receipt of Child Pornography in violation of 18 U.S.C. § 2252(a)(2).  Distribution and Receipt of Child Pornography are violent offenses, as defined by Congress in 18 U.S.C. §3156(a)(4)(C), and offenses involving minor victims pursuant to 18 U.S.C. §3142(e)(3)(E). As Congress and many courts have recognized, "[It is an] undeniable fact that real children are actually being abused and violated when pornographic images are made.  Without a market for such images, and without a strong appetite for more and more images exhibited by [defendant] and similarly situated defendants, there would be far fewer children who are injured and criminally assaulted in this way." *United States v. Miller*, 665 F.3d 114, 123 (5th Cir. 2011).

These offenses for which Mr. Beler was indicted carry lengthy statutory sentences of between five and twenty years' of incarceration, and mandatory minimum terms of incarceration of five years.  Moreover, based on the facts alleged in the complaint, including the thousands of files involved and the depiction of sexual abuse of infants and toddlers, Mr. Beler likely would face a guideline sentencing range of 210-262 months if he were convicted at trial.[2] The classification, statutory penalty, potential guideline sentence are all far graver than in *United States v. Dillon*, where the court upheld interstate threats as a serious offense granting an important governmental interest.   By any metric, his alleged offenses are serious and the government has an important interest in his prosecution.

---

[2] The base level for distribution of child pornography under U.S.S.G. § 2G2.2(a) is 22. The calculation above is derived by adding the following apparently applicable specific offense characteristics: the offense involved a prepubescent minor or minors under the age of 12 (+2); the offense involved the knowing distribution of child pornography (+2); the offense involved the portrayal of sadistic or masochistic conduct or the sexual exploitation of infants or toddlers (+4); the offense involved the use of a computer (+2)); and the offense involved more than 600 images (+5).  This gives a total offense level of 37.  With no criminal history, this produces a guideline range of 210-262 months.

There are no special circumstances present in this case that sufficiently negate this interest. *Sell* itself references two special circumstances. The first, the possibility of a lengthy civil confinement, is not clearly present in this case.  The applicable federal statute, 18 U.S.C. 4246, authorizes civil confinement post- dismissal of charges for mental health reasons only where an individual's release "would create a substantial risk of bodily injury *to another person* or serious damage to property *of another*" 18 U.S.C. 4246(d) (emphasis added). There is nothing in the evidence before the court to suggest that Mr. Beler presents such a direct risk to the body or property of others, and even the defense's expert conceded that the standard could not be met in this case. (Tr. 9/1/2020 at 96-100).   Moreover, even if the defendant did meet the standard for civil confinement, this would not be enough in and of itself to negate the Government's interest, as the Supreme Court in *Sell* recognized that lengthy civil confinement is not a substitute for a criminal trial and thus the potential of civil confinement "affects, but does not totally undermine, the strength of the need for prosecution."  539 U.S. at 180.

The second special circumstance referenced by the *Sell* court, a lengthy pre-trial detention, is not present here. The Defendant has been detained for approximately 16 months.[3] Viewed in absolute terms, this is comparable to the then 14 month pre-trial detention that this Court in *United States v. Dillon* held was "not so lengthy as to undermine the government's interest." 943 F. Supp. 2d 30, 35 (D.D.C.), aff'd, 738 F.3d 284 (D.C. Cir. 2013).  It is also the same or shorter in length than pre-trial detention found not to undermine the Government's interest in additional *Sell* decisions in this court, *see United States v. Aleksov*, 2009 WL 1259080, at *1–2 (D.D.C. May 7, 2009) (16 months) and other courts, *see e.g.*, *United States v. Bush*, 585 F.3d 806, 815 (4th

---

[3] He was detained from April until September 2019 and then October 2019 to the present.  From September 2019 until October 2019 he was on release after the case was initially dismissed by the presiding magistrate judge and before it was reinstated by Chief Judge Howell.

Cir.2009) (over 24 months).  Viewed relative to the Defendant's potential sentence, it is even clearer that the length of the defendant's pretrial detention does not undermine the Government's interest in trial in this case. Whereas in *Dillion* and *Aleksov*, the pretrial detention represented a substantial portion or majority of the sentence the defendant may have received given the respective guideline ranges of 51-60 and 10-33 months, that is not so here.  The approximately 16 months that the defendant has been incarcerated represents less than 30% of his mandatory minimum sentence and less than 10% of the low end of his applicable guideline sentence range as calculated by the government.

In addition to these, the defense cites two additional circumstances it alleges are special circumstances that undermine the Government's interest in prosecution: ▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and 2) what it claims is the low risk of danger/re-offense presented by the defendant.  Neither is persuasive.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮ Bringing an accused to a public trial "is fundamental to a scheme of 'ordered liberty' and prerequisite to social justice and peace." *Illinois v. Allen*, 397 U.S. 337, 347, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) (Brennan, J., concurring).  The value is not entirely outcome dependent. Simply bringing this legally supported distribution of child pornography case

to trial would make clear to the defendant and society the severity of the offense, and validate the numerous child victims. ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████

The defense's argument regarding the defendant's purported lack of dangerousness and risk of recidivism if released is similarly unsubstantiated.  As the defense's expert conceded, no standard risk assessment analysis has been undertaken to properly assess the risk of the defendant on release (Tr. 8/25/2020 at 113).  There is significant reason to doubt the claim that the defendant would pose little or no risk. The facts alleged in this case, including the alleged thousands of child pornography files found on the defendant's electronic devices, the defendant's technologically sophisticated setup, and the defendant's own statements to the FBI, suggest that the defendant did not engage in this unlawful activity as a one-time aberration. Rather, they may suggest that the defendant had been engaged in conduct related to child pornography for a substantial period of time without detection. And, given that he did so during a period of time that ███████████████ ████████████████████████there is no reason to believe that he would be unable to do so in the future if released, ██████████████████████████████

Even if the court did believe that the defendant posed no risk, however, this would not be enough.  The government's substantial interest in bringing the case to trial is sufficiently shown by the defendant's alleged actions and charges in the instant case. It need not independently establish that the defendant presents a danger or a high risk of recidivism to maintain such an interest.

In sum, the government has a substantial interest in bringing the defendant to trial in this case and there are no special circumstances here that undermine this interest.

**The Administration of Medication is Substantially Likely to Render Defendant Competent and Substantially Unlikely to Have Side Effects That Would Interfere with Mr. Beler's Ability to Assist Counsel in His Defense**

Second, this court finds clear and convincing evidence that involuntary medication would significantly further the government's important interest, because it is substantially likely to render Mr. Beler competent to stand trial and substantially unlikely to have side effects that would interfere with Mr. Beler's ability to assist counsel in his defense.

<u>The Administration of Medication is Substantially Likely to Render Defendant Competent</u>

Drs. Armstrong and Cuccio provided detailed support for their conclusion that involuntary medication would be substantially likely to render Mr. Beler competent, relying on their numerous interactions with Mr. Beler, ███████████████████████████ their own experiences treating others with ██████████████ and clinical studies regarding the efficacy of medication for patients with this condition.

Both Drs. Armstrong and Cuccio testified about their extensive interactions with the Defendant that aided them in forming their conclusion. ██████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

███████████████████    ██████████████████████

██████████████████████████████████████

competency restoration. (*Id.* at 17).

Dr. Cuccio conceded that she has been unable to meet with Mr. Beler in person in part due to the COVID-19 pandemic, but testified that she has met with him numerous times over VTC prior to forming her conclusions. (Tr. 8/4/2020 at 112). She further testified that she discussed Mr. Beler's progress with Dr. Armstrong frequently, had multiple conversations with others ███████, ordered and reviewed ████████████████ ██████████████████████████████████████████████████████████prior to reaching her conclusion. (*Id.* at 122).

The Defense's expert, Dr. Corvin, by contrast testified that prior to forming his conclusion, he had never met Mr. Beler in person, had spoken with him only 1 time for a total of one hour and 40 minutes over VTC, had not spoken to anyone currently or previously treating Mr. Beler, and had not reviewed any BOP records regarding his current treatment. (Tr. 9/1/2020 at 88-89). The extensive personal experience with Mr. Beler gives Drs. Armstrong and Cuccio's conclusion regarding likelihood of medication being successful for Mr. Beler substantially more weight.

Both Drs. Armstrong and Cuccio for the Government and Corvin for the Defense reviewed ██████████████████████████████████████████████████ ████████████████████████████████ Drs. Armstrong and Cuccio testified that based on their interpretation of the records, ███████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████████

Dr. Armstrong testified that ████████████████████████ ██████████████████████████████████████████████████

17

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████

        ███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████ Dr. Armstrong testified that

the goal of the forensic unit at the BOP is different than at hospitals.  At the forensic unit of the

BOP, the goal is "to reduce an individual's symptoms enough to the degree that they can

meaningfully participate in the process and proceeding and meaningfully participate in their

defense," not just to provide acute care (Tr. 8/4/2020 at 43). █████████████████████

███████████████████████████████████████████████

████████████████████  ████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████

        ███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████

Dr. Corvin ███████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████   ███████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████

Dr. Corvin's argument here is unpersuasive. █████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

The Court also gives significant weight to Dr. Cuccio's extensive experience evaluating others with Mr. Beler's condition and bringing individuals who were as ill as or more ill than Mr. Beler back to competency. Dr. Cuccio previously worked in forensic psychiatry for eight years

with the State of Texas where she treated patients to competency with psychotropic medication. (Tr. 8/4/2020 at 114). She performed approximately one thousand competency evaluations. (*Id.* at 116). And of those that were incompetent, she treated them to competency and was able to observe the rates at which patients were successfully treated with medication. (*Id.* at 117). Her opinion that Mr. Beler is substantially likely to be restored to competency is based on part on this wealth of experience. (Tr. 9/1/2020 at 174). Specifically, she testified regarding her successes using ████████████████████████████████████████████████████████████ ████████████████████████████████ And she highlighted her successful treatment of a large number of other patients ███████████████████████████████████████████who were restored to competency with medication. (*Id.* at 175). ██████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ Court agrees that Dr. Cuccio's extensive experience with similar patients provides significant support for her conclusion that Mr. Beler is substantially likely to be restored to competency under her treatment plan.

Finally, the conclusion that Mr. Beler is substantially likely to regain competency is supported by the literature provided to the Court, including an academic study referred to in testimony as the "Cochrane Study."[4] This study focused on psychiatric patients that were treated for competency restoration pursuant to Court ordered *Sell* orders. The results of the study found that 78.8% of those patients who were treated with █████████ medication were restored to competency. Specifically with regard to those patients treated ██████████████ ████████████████████████████████████████████████████ The study's

---

[4] Cochrane et al. (2012), "The *Sell* Effect: Involuntary Medication Treatment Is a 'Clear and Convincing' Success."

authors found that the median treatment time was 120 days and the older the patient, the decreased amount of time necessary for restoration.  Most medication side effects were "easily" managed by adjusting the patient's medications.  The study concluded that "[a]lthough individual cases will vary, the rates of restoration of competency in this cohort surpassed the 70% standard established by federal appellate courts, indicating, in most circumstances, involuntary treatment under the *Sell* criteria can be considered a 'clear and convincing' success."  Both Drs. Armstrong and Cuccio referred to the study, and Dr. Corvin, aware of its findings, attempted to dismiss it by saying that

████████████████████████████████████████████████████████████████████

However, Dr. Corvin later acknowledged that he did not know the demographics of the study participants. (*Id.* at 123).  ██████████████████████████████████████████

████████████████████████████████████

Though not determinative, these statistics, taken together with Drs. Armstrong and Cuccio's detailed interactions with Mr. Beler,█████████████████████████████and Dr. Cuccio's extensive experience with restoring patients more ill than Mr. Beler, provide further confidence that the proposed treatment is substantially likely to restore Mr. Beler to competency.

**The Administration of Medication is Substantially Unlikely to Have Side Effects That Will Significantly Interfere with the Defendant's Ability to Assist Counsel in Conducting a Defense**

Dr. Cuccio acknowledged the potential short- and long-term side effects from████████████

████████████ but she cogently explained both that these are not significantly likely to interfere with the defendant's ability to assist counsel and that there are treatments to help ameliorate many of the side effects.  The standard the government must prove is that potential side effects will not *significantly interfere* with Mr. Beler's ability to assist counsel in conducting a defense. This standard makes clear that it is not simply that the defendant not suffer any side effects, but that

they would interfere with his ability to assist counsel.  *United States v. Palmer*, 507 F.3d 300, 304

(5th Cir. 2007) (affirming district court's finding on second *Sell* factor where, *inter alia*, "all the

doctors who testified at the hearing agree that no matter which drug is used, in the vast majority

of cases the side effects can be treated or minimized"). *See also United States v. Weston*, 255 F.3d

873, 885 (D.C. Cir. 2001) ("The possibility of side effects from █████████████████ is

undeniable, but the ability of Weston's treating physicians and the district court to respond to them

substantially reduces the risk they pose to trial fairness.")

      Dr. Cuccio formed her opinion and treatment plan for Mr. Beler based on her experience

and after extensive review of his records and multiple interviews with him. ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████ █████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████ She testified that each and every one of the potential side effects

caused by the proposed medication has a corresponding treatment method (whether medicinal or

via diet and exercise). (*Id.* at 164-172).

      Dr. Cuccio made clear that she does not plan ███████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████    Not only is this the appropriate form of treatment, but reduces the chances of side effects. (Id).

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████    Dr. Cuccio made clear that Mr. Beler would be closely monitored and medication could be changed as need. (Tr. 8/24/2020 at 181).

Dr. Corvin testified that █████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████    ███████████    ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████

The testimony demonstrates that Mr. Beler will be carefully monitored, that any side effects will managed and treated if they arise, and that medication will be altered as need. Taken together, it is clear that that potential side effects will not *significantly interfere* with Mr. Beler's ability to assist counsel in conducting a defense

**Involuntary Medication is Necessary to Further the Government's Interest Because Any Less Intrusive Treatment Alternatives are Unlikely to Render the Defendant Competent**

Third, this court finds clear and convincing evidence that involuntary medication is necessary, and that less intrusive treatments are unlikely to achieve substantially the same results.



him to competency.  (*Id.* at 33-34).  ████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████

      Dr. Armstrong's expert opinion was that  ████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████  ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████  ████████████  Both her testimony and the BOP records make clear that she had

numerous conversations with Mr. Beler regarding medication, but that he still refused voluntary

administration.

      Dr. Cuccio reviewed extensive records and also had multiple conversations with Mr. Beler

regarding medication.  She testified tha ████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████  ████████████  ████████████████████

████████████████████████████████████████████████  Thus, any

attempted medication regimen short of forced medication will not be efficacious.  Dr. Cuccio

testified multiple times that ████████████████████████████████████████████

████████████████████████████████████████████████████

Dr. Cuccio went on to testify that without medication, not only will Mr. Beler not attain competency, ██████████████████████████████████████████ On the other hand, her opinion was that there is a substantial likelihood of Mr. Beler attaining competency if ordered to take medication. ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████

Dr. Cuccio agreed with Dr. Armstrong that Mr. Beler will not be restored to competency with therapy alone. (Id at 179). █████████████████████████████████

████████████████████████████████████ ███ ████
██████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████

████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████

In light of defendant's ███████████████████████████ ███████████████████████████ the government has demonstrated that less intrusive methods will not restore Mr. Beler to competency. *See Breedlove*, 756 F.3d at 1042 (upholding *Sell* order where experts testified that "other non-medication based treatments would be substantially unlikely to restore [defendant's] competency, because his present mental condition prevents him from participating in those treatments."); *United States v. Diaz*, 630 F.3d 1314, 1335-36 (11th Cir. 2011) ("Given the ample evidence presented by the government that Diaz has repeatedly and for a time period of over a year, refused to take medication and that alternative treatments for Diaz would be ineffective, the district court did not clearly err in concluding that the government had shown by clear and convincing evidence that involuntary medication is necessary to render Diaz competent to stand trial."); *United States v. Nicklas*, 623 F.3d 1175, 1180 (8th Cir. 2010) (*Sell*'s third prong satisfied where "district court again credited Dr. Newman's opinion and found because Nicklas 'has no insight into his mental illness, and is unable to participate meaningfully in counseling or other non-medication treatments,' and because his symptoms have not spontaneously remitted, 'no alternative, less-intrusive options are available'").

**The Administration of Medication is Medically Appropriate**

Finally, this court finds clear and convincing evidence that the medication proposed is medically appropriate. Great deference should be given to the medical appropriateness of a particular treatment plan as formulated by an appropriate expert. *See Weston*, 255 F.3d at 876, 886 ("[w]hether a proposed course of action is 'medically appropriate' obviously depends on the judgment of medical professionals" and "the 'risks associated with ██████████████████ are for the most part medical ones, best assessed by medical professionals'" (citation omitted)); *Breedlove*, 756 F.3d at 1043 (trial court did not clearly err in crediting physician's conclusion that involuntary

medication was "medically appropriate"); *United States v. Mackey*, 717 F.3d 569, 576 (8th Cir. 2013) (affirming district court's finding on *Sell*'s fourth factor where "court reasonably credited the expert testimony"); *Nicklas*, 623 F.3d at 1180-81 ("[a]lthough Nicklas disagree[d] with many of Dr. Newman's opinions, it was not clearly erroneous for the district court to be persuaded by, and base its findings upon, Dr. Newman's report" where Dr. Newman opined that "administering the recommended drugs was 'medically appropriate'"); *United States v. Green*, 532 F.3d 538, 557 (6th Cir. 2008) (affirming district court's finding on *Sell*'s fourth factor where there was "no evidence in the record to refute the conclusion that ████████████ is in Green's best medical interest").

Dr. Cuccio testified that her treatment plan includes recommending ███████████ to treat Mr. Beler (Tr. 8/4/2020 at 160). ████████████████████ ████████████████████████████████████ ████████████████████ Dr. Cuccio testified that the medication she has proposed is medically appropriate for Mr. Beler and would be specifically tailored to him as an individual patient.  (*Id.* at 180-181). She also explained that ████████ ████████████████████████████████████ ██████

Dr. Cuccio explained that she is recommending ████████ for Mr. Beler because ████████ ████████████████ ██████████ ██████ ████████████████████████████████████ ████████████████ ████████████████ ████████████████████████████████████ ██████████████████████████

With regard to the medication choice, Dr. Cuccio testified that ███████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████

Dr. Cuccio testified multiple times that ███████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████

"*Sell* does not identify a requisite degree of specificity concerning the drugs to be used for involuntary medication." *United States v. Hernandez-Vasquez*, 513 F.3d 908, 916 (9th Cir. 2008). Nor does *Sell* "direct district courts to micromanage the decisions of medical professionals." *Hernandez-Vazquez*, 513 F.3d at 916. The expert testimony clearly meets the government's burden that the treatment plan for Mr. Beler is medically appropriate.

## <u>CONCLUSION</u>

For all of the reasons set forth above, and any other reasons set forth at any hearing on this issue, a consideration of the evidence in this case shows that the government has met its burden under *Sell v. United States*.

WHEREFORE, the government respectfully requests that the court grant its motion for involuntary medication of the defendant pursuant to *Sell v. United States*.

Respectfully submitted,

MICHAEL R. SHERWIN
ACTING UNITED STATES ATTORNEY


___/s/*Nicholas Miranda* _____
NICHOLAS MIRANDA

JENNIFER CONNOR
Assistant United States Attorneys
D.C. Bar 995769
U.S. Attorney's Office
555 4th Street, N.W., Room 4-482
Washington, D.C. 20530
202-252-7011
Nicholas.Miranda@usdoj.gov