UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>PETER BELER<br><br>Defendant. | Case No. 1:19-cr-415 |

**DEFENDANT PETER BELER'S RESPONSE TO THE GOVERNMENT'S
PROPOSED STATEMENT OF FACTS AND CONCLUSIONS OF LAW**

Courtney R. Forrest
Emily Voshell
Jonathan Jeffress
KaiserDillon PLLC
1099 14th St. NW, 8th Floor West
Washington, DC 20005
Telephone: (202) 640-2850
Facsimile: (202) 640-1034

*Counsel for Defendant Peter Beler*

Pursuant to the Court's Minute Orders dated September 2 and 23, 2020, Defendant Peter Beler, through undersigned counsel, hereby respectfully submits his Response to the government's Proposed Statement of Facts and Conclusions of Law ("Govt. Br.").

### Facts Contested By Mr. Beler

Mr. Beler contests the following facts alleged in the government's brief:[1]

1. Mr. Beler contests the characterization of his statement to law enforcement in Govt. Br. at 2 ¶ 2. The government does not cite to the record for this alleged fact; nor is there anything in the record that reflects the statements here.[2] Mr. Beler made a second statement to law enforcement that is not in the record to which the government appears to be referring. It should be noted that, in that statement, Mr. Beler repeatedly said that he had only searched for child pornography over the last two to three months[3] and denied years of collecting child pornography.

2. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

3. Mr. Beler contests the terms "multiple" and "numerous" to characterize the meetings Dr. Cuccio had with him before submitting her proposed treatment plan (GX 4). Govt Br. at 4 ¶ 1; 6 ¶ 4 to 7 ¶ 1; 17 ¶ 1. Dr. Cuccio only met with him *twice* before submitting her plan, 8/18/20 Tr. at 17-20, despite representing in her report that she met with him four times. GX 4 at 10.

---

[1] The government's brief does not distinguish between its proposed findings of fact and conclusions of law. Mr. Beler has endeavored to respond to all the contested factual statements he could identify, but the failure to respond to any statement in the government's brief should not be construed as a waiver of Mr. Beler's right to contest the government's factual assertions during any appeal in this matter.

[2] The government cited to JX 1, but that exhibit is Mr. Beler's records ████████ ████████████████████████████████████

[3] Mr. Beler ████████████████████████████████████████████████████████ and arrested on April 17, 2019. 8/24/20 Tr. at 131.

4. Mr. Beler contests the characterization of the BOP's efforts to offer Mr. Beler therapy. Govt. Br. at 6 ¶ 3. ██████████████████████████████████████

5. Mr. Beler contests any finding of fact that relies on Dr. Armstrong's opinions regarding whether forced medication is substantially likely to make Mr. Beler competent. *See, e.g.*, Govt. Br. at 6 ¶ 3 (sentences 2 & 3); *id.* at 16 ¶ 3 (whether restoration with medication is "substantially likely"); *id.* at 17 ¶ 4 ████████████████████████████████ Dr. Armstrong is a psychologist and thus not qualified to offer such opinions. 8/4/20 Tr. at 46 (the Court ruling that Dr. Armstrong "cannot opine about the medication from a psychiatric perspective").

6. Mr. Beler contests the characterization of Dr. Cuccio's opinion regarding in-person meetings as "her preferred treatment method." Govt. Br. at 6 ¶ 4. Dr. Cuccio testified that it was in fact the "standard" to meet with Mr. Beler in person. 8/18/20 Tr. at 11.

7. Mr. Beler acknowledges that Dr. Cuccio testified as described at Govt. Br. at 7 ¶¶ 2-3; 8 ¶¶ 1, 2. However, Mr. Beler generally contests the substance of Dr. Cuccio's statements for the reasons detailed in Defendant's Brief at 11-22, 49-56. In addition, he contests the following specific statements:

- ████████████████████████████████████████████

- ████████████████████████████████████████████

- ███████████████████████████████████████████████

- ███████████████████████████████████████████████

8. Mr. Beler contests that ███████████████████████████████████
███████████████████████████████████████████████████████ That is a mischaracterization of his testimony. Indeed, Dr. Corvin was clear that the treatment plan that the BOP has proposed—███████████████████████████████—is *not* medically appropriate. 8/25/20 Tr. at 178; Def. Br. at 26-30. ████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████

9. Mr. Beler contests the last sentence of paragraph one of the government's brief (at 9) because it misrepresents Dr. Corvin's testimony. ███████████████████████
███████████████████████████████████████████████

3

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████

██████████████████████████

████████████████████████

██████████████████████████

██████████████████████████

████████████████████████

█████████████████████████████

████████████████████

10. Mr. Beler contests that Dr. Corvin ███████████████████████

███████████████████████████████

████████████████████████ The government does not cite to the record to support this overly simplistic and unsupported characterization. ████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

████████████████████████████

███████████████████████████████

██████████████████████

11. Mr. Beler contests that Dr. Corvin testified that Dr. Cuccio's proposal was not medically appropriate because ███████████████████████████████

4

████████████████████████ Dr. Corvin testified that the proposed treatment plan is dangerous ███████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████

████████████████████████████████

█████████████████████████████████████████ Mr. Beler further contests the government's statement to the extent that it implies this is the *only* reason Dr. Corvin believes the proposed treatment plan is not medically appropriate. Govt. Br. at 9 ¶ 3. Dr. Corvin also testified that Dr. Cuccio's proposal was not medically appropriate for the reasons stated in Defendant's Brief at 26-30.

12. Mr. Beler contests the last sentence of Govt. Br. at 9 ¶ 3, because it mischaracterizes Dr. Corvin's testimony. ██████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████

██████████████████████████

### Defendant's Response to Government's Proposed Conclusions of Law

**A.    The government has not met its clear and convincing burden on *Sell* prong 1.**

The government attempts to chip away at the numerous special circumstances that diminish its prosecution interest, failing to acknowledge the merit of *any* of them. But this is just a distraction from what the facts make clear: The government has not met its burden to demonstrate "a current, important interest in prosecuting" Mr. Beler that would justify the "grave intrusion" of forced medication. *United States v. Gamarra*, 940 F.3d 1315, 1321 (D.C. Cir.), *cert. denied*, 140 S. Ct. 570, 205 L. Ed. 2d 367 (2019) (Pillard, concurring).

Indeed, the government's arguments in favor of its "current, important" interest—in addition to involving misstatements of the law and testimony—are based on generalizations that could apply to all similar prosecutions.

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
██████████████████████████████

Second, the government incorrectly asserts that "a lengthy pre-trial detention is not present here." Govt. Br. at 13. The government cites *United States v. Aleksov*, 2009 WL 1259080, at *1-2 (D.D.C. May 7, 2009), for the proposition that sixteen months of pretrial incarceration did not undermine the government's interest in prosecution. That, however, is not the holding of *Aleksov*. In fact, Magistrate Kay found that 16 months *was* a "substantial period of time" and that the defendant *had* "served a considerable portion of a possible sentence should he be convicted," but ultimately found the first *Sell* prong met because of other circumstances of that case. *See also United States v. Bush*, 585 F.3d 806, 815 (4th Cir. 2009) (same).

Further, the government's sole reliance on the guidelines as a way to determine Mr. Beler's likely sentence is inapt in this case, given both the strong critiques of the child pornography sentencing guidelines and the fact that courts vary downward from those guidelines in the vast majority of cases. In its 2013 report, the Sentencing Commission found that the

current sentencing scheme in U.S.S.G. § 2G2.2 does not accurately measure the severity of non-production child pornography offenses.[4] Indeed, four of the enhancements the government identifies here—the nature and volume of the images possessed, the use of a computer, and distribution of the images—are ones that the Commission identified as "originally … promulgated in an earlier technological era" when child pornography was typically received and distributed in printed form, but now are "being applied routinely to most offenders." *Id*. at 313 (citing U.S.S.G. § 2G2.2(b)(2)-(4), (6)-(7)). Likely recognizing this, most district courts (69.1% for fiscal year 2019)[5] imposed below-guidelines sentences in child pornography cases. Thus, when Mr. Beler's pretrial incarceration is considered, it should be compared against his *likely* sentence, which, for both these and the reasons stated in the Defendant's Brief at pages 39-40, is likely to be far lower than the guidelines sentence.

████████████████████████████████████████

████████████████████████████████████████

██████████ The government cites no cases to support this argument and misrepresents Dr. Corvin's testimony. ████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

---

[4] Available at: https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Full_Report_to_Congress.pdf.
[5] https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/quarterly-sentencing-updates/USSC-2019_Quarterly_Report_Final.pdf

███████████████████████████████████████████

███████████████████████████████

Finally, the evidence is clear that Mr. Beler is not dangerous. Revealingly, the government does not cite to the record to support its argument that Mr. Beler may have viewed child pornography "for a substantial period of time." Govt. Br. at 15. Indeed, Mr. Beler told law enforcement that he had only explored the dark web for a "couple months" preceding his April 2019 arrest.[6] The government is also wrong that "there is no reason to believe" that Mr. Beler would be unable to refrain from viewing child pornography if released. Govt. Br. at 15. In fact, the parties stipulated that Mr. Beler was released for a month, believed his case was dismissed, but nevertheless did not access child pornography again.[7] ECF No. 76.

**B.   The government has not met its clear and convincing burden on *Sell* prong 2.**

1. <u>The BOP doctors' greater access to Mr. Beler does not entitle their opinions to more weight</u>.

The government erroneously claims that the Court should give more weight to its doctors' opinions on the second *Sell* factor because they have more "personal experience" with Mr. Beler. Govt. Br. at 17. This is an unjustified attempt to bootstrap Drs. Armstrong's and Cuccio's conclusions, which otherwise do not meet the government's clear and convincing evidentiary burden to demonstrate that the BOP's proposed treatment plan is substantially likely to restore Mr. Beler's competency.[8] *See* Def. Br. at 49-56.

---

[6] This statement is not in the record, *see* ¶ 1, *supra*. ████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

[8] As noted above, Dr. Armstrong is a psychologist and is not qualified to offer opinions regarding whether the medications proposed in the BOP's treatment plan are "substantially likely" to render Mr. Beler competent. *See supra*, ¶ 5.

8

As an initial matter, Dr. Corvin actually spent *more* time with Mr. Beler before formulating his opinions than Dr. Cuccio did before forming hers.[9] More broadly, *Sell* defendants are almost always detained at federal prisons, where BOP medical personnel have the ability to spend more time with the defendant than any defense expert. *See United States v. Ruiz-Gaxiola*, 623 F.3d 684, 702 (9th Cir. 2010). "If a court can reject the opinion of a defense expert based solely on the lengthier observation conducted by the government experts, it will always be possible for the government to prevail in a *Sell* hearing by having its experts spend a greater amount of time with the defendant." *Id*. This "approach would create an unjustifiable risk of erroneous results and deprive defendants of the vitally important protections that a *Sell* hearing is designed to provide." *Id.; see also Gamarra*, 940 F.3d at 1319 (Pillard, J., concurring) (noting the government's superior access to the defendant during *Sell* proceedings "strain[s] our adversary system."). The government's advantages by virtue of its detention of Mr. Beler does not warrant granting its experts greater credibility.

2. The government's experts' interpretation of Mr. Beler's medical records is not credible.

The government is correct that Dr. Corvin and Dr. Cuccio formed different opinions based on Mr. Beler's medical records. Govt. Br. at 17. The key difference is that Drs. Cuccio and Armstrong conspicuously failed to support their conclusions with evidence in the documentary record, whereas Dr. Corvin clearly and consistently did so. When opining that her treatment plan is "substantially likely" to restore Mr. Beler's competency, Dr. Cuccio did not refer to a *single page* of the thousands of pages of medical records she purportedly reviewed—

---

[9] Dr. Corvin met with Mr. Beler once by VTC for 1 hour and 40 minutes, DX 2 at 8, whereas Dr. Cuccio met with Mr. Beler twice by VTC for 30-45 minutes each. 8/4/20 Tr. at 138; 8/18/20 Tr. at 17-20.

9

not in her report (GX 4), not in her direct testimony,[10] not on cross-examination, and not on rebuttal. Nor did the government cite to a single one of the medical records exhibits in its brief. Indeed, the government seems to be deliberately discouraging the Court from looking at the records because the documents would reveal the lack of support for its witnesses' opinions.

Many of Drs. Cuccio and Armstrong's representations are directly contradicted by the records. For example, as discussed in Defendant's Brief, ███████████████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

███████████ The cross-examinations of Dr. Cuccio frequently revealed that her testimony about Mr. Beler's medical records was imprecise, at best, and inaccurate, at worst. *See, e.g.*, 8/24/20 Tr. at 10 (did not recall reviewing MAR from WHC); 8/24 Tr. at 27 ███████

███████████████████████████████████████████████ 8/25/20 Tr. at 48-49, 155 ███████████████████████████████████████ 8/25/20 Tr. 120-21 (admitting error in earlier testimony, stating "I'm not so good with all this paper, you know.").

The government's attempts to discredit Dr. Corvin are also unconvincing. Contrary to the government's claim, Dr. Corvin reviewed BOP records regarding Mr. Beler's treatment before he testified; the government had not produced those records to the defense before Dr. Corvin submitted his report. 8/25/20 Tr. at 21. Further, those records only bolstered Dr. Corvin's conclusions ███████████████████████████████████

---

[10] Indeed, counsel for the government did not even provide Dr. Cuccio with copies of the hearing exhibits before she testified, necessitating a continuance of the hearing before cross-examination could proceed. 8/18/20 Tr. at 75. The hearing was being conducted by VTC and defense counsel did not have the ability to share documents due to limitations of the VTC platform.

10

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (citing to BOP records in support of defense arguments and Dr. Corvin's conclusions). The government also criticizes Dr. Corvin for not speaking with any of Mr. Beler's health care providers at BOP, but there is *no evidence* that those providers would have been willing—or even permitted by BOP policies—to discuss Mr. Beler's care with him. Finally, Dr. Corvin also has experience treating incompetent defendants and observing the circumstances under which patients were successfully restored or not, so Dr. Cuccio's similar experience does not entitle her opinions to greater weight. 8/25/20 Tr. at 12.

The Court should also reject the government's attempt to obfuscate Dr. Corvin's testimony ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇[11]▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

3. <u>The Cochrane Study does not indicate that ▇▇▇▇▇▇▇▇▇▇▇▇ are "substantially likely" to restore Mr. Beler to competency</u>.

The Cochrane Study confirmed the rarity of *Sell* orders, noting that courts had authorized involuntary medication for only 46% of defendants for whom the government had requested it. JX 9 at 109. Thus, the study's general applicability is limited because it reported only on the

---

[11] ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Dr. Cuccio was wildly inconsistent on this point and cited no authority for her opinion, *see* Def. Brief at 14, and is incorrect, as Dr. Corvin explained. *Id*.

11

outcomes of defendants for whom courts had *already concluded*, based on the defendant's individual circumstances, that restoration was "substantially likely." Even then, nearly a fifth of defendants ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ were not able to be restored. *Id.* at 113. ▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Moreover, another reference discussed in the Buter *Sell* Appendix (GX 5) indicates that Mr. Beler is not substantially likely to be restored. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

**C.   The government has not met its clear and convincing burden on *Sell* prong 3.**

The government has failed to show, by clear and convincing evidence, that the BOP has made adequate efforts to have Mr. Beler take medication voluntarily. The government claims that the defense's critiques about the government's poor effort are unfounded because they ignore "the exhaustive efforts made by Drs. Armstrong and Cuccio, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Gov. Br. at 26. But the government has put forth little more effort here than in *Gamarra*, where Judge Pillard was "skeptical" that the record contained clear and convincing evidence that the government had met its burden. Here, as in *Gamarra*, the psychologist (Dr. Armstrong)'s role was as a "primary forensic evaluator" and to "provide competency restoration," as opposed to playing a therapeutic role. 8/4/20 Tr. at 16, 52.

12

*Gamarra*, 940 F.3d at 1322 (Pillard, J. concurring) (noting that the "record did not cast" the BOP psychologist "in a therapeutic role").

Also, here, as in *Gamarra*, the psychiatrist, Dr. Cuccio, never met with Mr. Beler in person. *Id.* Dr. Cuccio only met with Mr. Beler twice over video before concluding that forcible medication was the only option. 8/18/20 Tr. at 17-20. Though she also met with him the week before the *Sell* hearing and the day after the first day of the *Sell* hearing, there is no evidence of a therapeutic component to those meetings. JX 18 at 1-2.[12] ███████████████

███████████████████████████████

███████████████████████████████

███████████████████████ These can hardly be called "exhaustive" efforts to convince Mr. Beler to take medication.

Additionally, the government mischaracterizes Mr. Beler's ███████

███████████████████████████

███████████████████████████

███████████████████████████

███████████████████████████

███████████████████

---

[12] ███████████████████████████████
███████████████████████████████
███████████████████████████████

13

**D.      The government has not met its clear and convincing burden on *Sell* prong 4.**

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

██████████████████████████████ The government's silence is deafening.  For this reason alone, the government has failed to meet its clear and convincing burden on this prong.

In addition, although Dr. Cuccio offered some reasons for why she would like to treat Mr. Beler ██████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████

Finally, contrary to the government's contention, *see* Gov. Br. at 27, the Court owes no deference "to the medical appropriateness" of the BOP's proposed treatment plan.  Not a single one of the cases cited in the government's brief support this proposition.  *Weston* was decided prior to *Sell*, and says that medical appropriateness is best assessed by medical professionals generally, *not* only by the BOP staff proposing the plan.  *United States v. Weston*, 255 F.3d 873, 886 (D.C. Cir. 2001).  In three other cited cases, the defense did not call any witness during the *Sell* hearing and thus the government experts' testimony was unrebutted.  *See United States v. Breedlove*, 756 F.3d 1036, 1039 (7th Cir. 2014); *United States v. Mackey,* 717 F. 3d 569, 576 (8th Cir. 2013); *United States v. Nicklas*, 623 F.3d 1175, 1177 (8th Cir. 2010).  Finally, in *United*

14

*States v. Green*, the defense expert "did not disagree with [government expert's] medical recommendations or proposed treatment plan[.]" 532 F.3d 538, 557 (6th Cir. 2008).

Indeed, courts may not conclude that the government has met its burden on any *Sell* prong just because the government's expert says as much. *See United States v. Watson*, 793 F.3d 416, 424 (4th Cir. 2015); *Ruiz-Gaxiola*, 623 F.3d at 700-01 ("generalized statements and unsupported assertions of the government experts, when contrasted with the specific and authoritative rebuttal evidence presented by the defense, were plainly insufficient to establish [*Sell* prong 2] by clear and convincing evidence"). In *Watson*, the 4th Circuit reversed, rather than remanded, the district court's *Sell* order due to the court's "problematic" "failure to look beyond [the government psychiatrist's] conclusory assertion that the government's burden had been met." 793 F.3d at 426.

On every *Sell* prong, the government must exercise "exacting diligence," *Gamarra*, 940 F.3d at 1319 (Pillard, concurring), and cannot rely on the court's "deference" or unsupported conclusory assertions to meet its burden. For all of the reasons above, and those discussed in Mr. Beler's opening brief, the government has not shown by clear and convincing evidence that its proposed treatment plan is medically appropriate for Mr. Beler.

## CONCLUSION

The government has failed to meet its clear and convincing burden to justify the intrusion of forcibly medicating Mr. Beler. Nothing in its brief—which fails to cite *any* of Mr. Beler's extensive medical records—should convince this Court otherwise. The government's motion for an order authorizing involuntary medication under *Sell* should be denied.

DATED:  September 29, 2020                    Respectfully submitted,

_/s/ Courtney R. Forrest_
Courtney R. Forrest (DC Bar Number 996740)
Emily Voshell (DC Bar Number 1029403)
Jonathan Jeffress (DC Bar Number 479074)
KaiserDillon PLLC
1099 14th St. NW, 8th Floor West
Washington, DC 20005
cforrest@kaiserdillon.com
evoshell@kaiserdillon.com
jjeffress@kaiserdillon.com
Telephone: (202) 640-2850
Facsimile: (202) 640-1034

*Counsel for Defendant Peter Beler*

## CERTIFICATE OF SERVICE

I certify that on September 29, 2020, I filed the foregoing Defendant's Response to the Government's Proposed Statement of Fact and Conclusions of Law under seal via the Court's CM/ECF system and served copies by email on all registered parties.

*/s/ Courtney R. Forrest*
Courtney R. Forrest