## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PETER BELER,<br><br>Defendant. | Criminal Action No. 19-415 (CKK) |

## MEMORANDUM OPINION
(January 29, 2021)

The government has moved to involuntarily medicate Defendant Peter Beler to render him competent to stand trial. Pursuant to *Sell v. United States*, the Court must decide whether "in light of the efficacy, the side effects, the possible alternatives, and the medical appropriateness of a particular course of ███████ treatment, [the government has] shown a need for that treatment sufficiently important to overcome the individual's protected interest in refusing it." 539 U.S. 166, 183 (2003). Upon consideration of the testimony offered at the *Sell* hearing before this Court, and the entire record herein,[1] the Court shall **DENY** the government's motion.

## I. FINDINGS OF FACTS

### A. Mr. Beler's Arrest, Commitment, and Indictment

In March 2019, federal law enforcement officers began to investigate a list of internet protocol ("IP") addresses suspected of sharing child pornography images and videos on a peer-to-

---

[1] This Memorandum Opinion focuses on the following briefing and record materials:
- Compl., ECF No. 1;
- Def.'s Proposed Stmt. of Facts and Concl. of Law ("Def.'s Br."), ECF No. 89-1;
- Gov't Proposed Stmt. of Facts and Concl. of Law ("Gov't Br."), ECF No. 90;
- Gov't Reply to Def.'s Proposed Stmt. of Facts and Concl. of Law ("Gov't Reply"), ECF No. 92-1;
- Def.'s Resp. to Gov't Proposed Stmt. of Facts and Concl. of Law ("Def.'s Resp."), ECF No. 94-1;
- Exs. from *Sell* Hrg., ECF No. 86, cited as: ("Joint Ex. at __"), ("Gov't Ex. at __"), and ("Def.'s Ex. at __");
- *Sell* Hrg. Tr.'s, ECF Nos. 78, 82–84, and 88, cited as: ("X/X/X Tr. at __.")

peer file sharing network. *See* Compl., Stmt. of Facts, at 2. During their investigation, law enforcement identified a specific IP address (the "Subject IP Address"), which maintained child pornography files. *Id.* On March 5, 2019, an undercover officer connected directly to the Subject IP Address and initiated downloads from the Subject IP Address of files containing suspected child pornography. *Id.* By April 4, 2019, law enforcement confirmed that the Subject IP Address was assigned to Mr. Beler's apartment. *Id.*

On April 17, 2019, law enforcement officers executed a search warrant at Mr. Beler's apartment, located in Washington, D.C. *See id.* Upon execution of the search warrant, Mr. Beler opened the front door, and was subsequently removed to the hallway while the officers cleared his apartment. *Id.* Law enforcement officers confirmed that Mr. Beler was the only person present in the apartment at the time of the search. *Id.* After clearing Mr. Beler's apartment, the officers observed in plain view that Mr. Beler's computer, which was connected to his television monitor, was downloading and uploading files. *Id.* at 2–3. Multiple file names visible on the screen were indicative of child pornography, and a manual search of Mr. Beler's computer identified more than 2000 files of suspected child pornography depicting pre-pubescent children. *Id.* at 3. Mr. Beler spoke with law enforcement officers at the time of this search and, according to those officers, Mr. Beler admitted to possessing child pornography, which he referred to as "bad files." *Id.* Mr. Beler denied the distribution of child pornography. *Id.*

The officers arrested Mr. Beler on April 17, 2019, and, on that same day, a criminal complaint charged Mr. Beler with a single count for the Distribution and Receipt of Child Pornography in violation of 18 U.S.C. § 2252(a)(2). *See* Compl. at 1. A preliminary hearing took place on April 23, 2019, wherein Magistrate Judge Deborah A. Robinson made a finding of probable cause. *See* Apr. 23, 2019 Min. Entry. Magistrate Judge Robinson also ordered an

examination of Mr. Beler to determine whether he was suffering from a mental disease or defect rendering him incompetent. *See* Order, ECF No. 8, at 1. A forensic psychologist for the Bureau of Prisons ("BOP"), Dr. Jessica Micono, then examined Mr. Beler and filed a forensic evaluation on August 6, 2019, ███████████████████████████████████ and concluded that Mr. Beler was not competent to proceed with his case. Joint Ex. 6 at 15.

Neither party disputed Dr. Micono's competency findings and, on August 14, 2019, Magistrate Judge Robinson ordered that Mr. Beler be committed to the BOP for treatment, in an effort to restore his competency for trial. *See* Order, ECF No. 15, at 1. On December 16, 2019, the government returned a formal indictment against Mr. Beler charging him with three counts: Distribution of Child Pornography in violation of 18 U.S.C. § 2252(a)(2); Receipt of Child Pornography in violation of 18 U.S.C. § 2252(a)(2); and Possession of Child Pornography in violation of 18 U.S.C. § 2252(a)(4)(B). *See* Indictment, ECF No. 57. Finally, on December 19, 2019, after an initial delay, Mr. Beler arrived at the BOP's FMC Fort Worth, Texas facility for competency restoration. *See* Dec. 23, 2019 Status Rep., ECF No. 59, at 1. Mr. Beler continues to reside at FMC Fort Worth and all parties agree that he presently remains incompetent to stand trial. *See id.*; Gov't Reply at 2.





████████████████████████████████████████████

███████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████ ███████ ███████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

### 2. BOP Treatment and Assessment

Mr. Beler was first committed to BOP custody on April 23, 2019, *see* Order, ECF No. 8, at 1, and he has been hospitalized at FMC Forth Worth since December 19, 2019, *see* Dec. 23, 2019 Status Rep., ECF No. 59, at 1.  During his time in BOP custody, ████████████████████ ████████████████████████████████████████ including group competency restoration

---

█████████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████
███████████████████

sessions and weekly social skills work.  *See* 8/4/2020 Tr. at 18–33.

**████████████████████████████████████████████**

**████████████████████████████████████████████████**

**████████████████████████████████████████████████**

**████████████████████████████████████████████████**

**████████████████████████████████████████████████**

**████████████████████████████████████████████████**

**████████████████████████████████████████████████**

**██   ████████████████████████████████████████████**

**████████████████████████████████████████████████**

**████████████████████████████████████████████████**

**████**

## C. BOP Proposed Treatment Plan and Expert Testimony

On May 20, 2020, BOP psychiatrist Dr. Cuccio provided a proposed treatment plan that could be used to involuntarily medicate Mr. Beler under *Sell*, for the purposes of restoring him to competency for trial. *See generally* Gov't Br., Ex. 4. Dr. Cuccio based her report and treatment plan on her review of Mr. Beler's prior medical records, the July 2019 evaluation provided by Dr. Micono, and the March 2020 evaluation provided by Dr. Armstrong. *See id.* at 1. Additionally, Dr. Cuccio relied on her consultations with Dr. Armstrong and her videoconference meetings with Mr. Beler. *See id.* at 5, 9–10. **███████████████████████████████**

**████████████████████████████████████████████████**

**████**

Dr. Cuccio's proposed treatment plan presents two "options." *Id.* at 15. **██████████████**

**████████████████████████████████████████████████**

**████████████████████████████████████████████████**



Dr. Cuccio estimates that this treatment will restore Mr. Beler to competency within "six months or less." *Id.*

The Court held a five-day *Sell* hearing to consider Dr. Cuccio's proposed treatment plan, beginning on August 4, 2020 and concluding on September 1, 2020. On behalf of the government, Dr. Cuccio and Dr. Armstrong testified as experts, in favor of Mr. Beler's involuntary medication. In turn, defense counsel offered Dr. George Corvin, M.D., as an expert witness. Dr. Corvin testified against the propriety of the BOP's proposed treatment plan for Mr. Beler. Mr. Beler was also present himself, via videoconference, at the *Sell* hearing in this case. During the hearing, Mr. Beler was visible to the Court, and the Court observed that Mr. Beler sat calmly, did not exhibit any visible tremors, and was only disengaged from the hearing at times.

### 1. Government's Expert Testimony

The government first offered the testimony of Dr. Leticia Armstrong, a BOP psychologist who has worked with Mr. Beler at FMC Fort Worth. *See* 8/4/2020 Tr. at 16. In her testimony, Dr. Armstrong stated that she had met with Mr. Beler on a weekly basis during his stay at FMC Forth

Worth, and that her role was to act as Mr. Beler's "primary forensic evaluator." *Id.* at 16–19. Dr. Armstrong further explained that her work was focused on "competency restoration," which "entails medication and/or psychoeducation classes about . . . the court process in general." *Id.* at 32. ███████████████████████████████████████████████████████████

████████████████████████████████████████████████████  ████████████ Dr. Armstrong opined that therapy alone would not return Mr. Beler to competency. *Id.* at 33–34.

The government also proffered the expert testimony of Dr. Anne Cuccio. Dr. Cuccio has been employed with the BOP since 2010 and is currently the BOP treating psychiatrist assigned to Mr. Beler. *See* Gov't Ex. 3 at 1. Dr. Cuccio is a licensed psychiatrist with the state of Oklahoma and is board certified in general psychiatry by the American Board of Psychiatry and Neurology. *See id.* at 4. Notably, Dr. Cuccio also has eight years of experience in forensic psychiatry working for the State of Texas. *See* 8/4/2020 Tr. at 114. During her time with the State of Texas, Dr. Cuccio performed approximately 1,000 competency evaluations and treated numerous disabled patients to competency. *See id.* at 116. Dr. Cuccio, however, provided this treatment before *Sell*, *see id.* at 116–17, and has no prior experience testifying at a *Sell* hearing, *see* 8/18/2020 Tr. at 44–46. Dr. Cuccio further explained that she is "not mainly employed as a forensic psychiatrist" by the BOP, but rather as "a clinician." *Id.* at 14:3–6. Before submitting her proposed treatment plan in this case, Dr. Cuccio met with Mr. Beler two times over videoconference, for a combined total of approximately one and a half hours. *See* 8/4/20 Tr. at 138; 8/18/20 Tr. at 17–20.[4] Dr. Cuccio conceded that in-person treatment from a psychiatrist is preferable, but stated that she was unable

---

[4] In her May 20, 2020 expert report proposing involuntary medication, Dr. Cuccio stated that she first met with Mr. Beler remotely on January 29, 2020. *See* Gov't Ex. 4 at 9–10. Dr. Cuccio then stated in her report that she "also met with [Mr. Beler] on three other occasions, February 4, March 3, and April 30, 2020," "in an effort to continue encouraging him to consider medication." *Id.* at 10. In her testimony, however, Dr. Cuccio admitted that these dates were inaccurate, and that she only met with Mr. Beler twice before submitting her May 20, 2020 report, on January 29, 2020 and April 29, 2020. *See* 8/18/2020 Tr. at 20–25.

to meet with Mr. Beler in person at the FMC Fort Worth facility because of travel restrictions caused by the ongoing COVID-19 pandemic. *See* 8/4/2020 Tr. at 112; 8/18/2020 Tr. at 14.

In her testimony, Dr. Cuccio opined that Mr. Beler was presently incompetent to stand trial

In further support of her proposed treatment plan, Dr. Cuccio cited to success she has observed with the administration of ▮▮▮▮▮▮▮▮▮ to prior patients who have been "much sicker" than Mr. Beler. 9/1/2020 Tr. at 175. ▮▮▮▮▮▮▮▮▮

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████     In sum, she opined that the BOP's proposed treatment plan was substantially likely to restore Mr. Beler to competency.  *See* 8/4/2020 Tr. at 185–86.

Additionally, Dr. Cuccio addressed the risk of side effects posed by her treatment plan. ██

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████    ████████████    ████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████

### 2. Expert Testimony on Behalf of Mr. Beler

In opposition, defense counsel proffered one expert witness, Dr. George Corvin. Dr. Corvin is a psychiatrist practicing clinically in Raleigh, North Carolina, who has previously completed a fellowship in forensic psychiatry at FMC Butner. *See* Def.'s Ex. 1 at 1. Dr. Corvin is a distinguished fellow of the American Psychiatric Association and board-certified in general and forensic psychiatry by the National Board of Physicians and Surgeons. *Id.* Additionally, Dr. Corvin has offered forensic opinions in over 300 criminal cases, including numerous *Sell* hearings in both state and federal courts. *See* 8/25/2020 Tr. at 16.

In his capacity as an expert in this case, Dr. Corvin was asked only to opine on the efficacy of the BOP's proposed treatment plan for Mr. Beler and its forensic propriety under *Sell*. *See* Def.'s Ex. 2 at 1. Dr. Corvin was not asked to propose an alternative treatment plan for Mr. Beler and did not offer a formal treatment plan for Mr. Beler, either clinically or for competency restoration. *See id.*; *see also* 9/1/2020 Tr. at 145. In preparing his expert opinion, Dr. Corvin reviewed over 4,000 pages of Mr. Beler's medical records, including Dr. Cuccio's forensic report and proposed treatment plan, as well as Mr. Beler's July 2019 evaluation from Dr. Micono and March 2020 evaluation from Dr. Armstrong. *See* Def.'s Ex. 2 at 4–5. Dr. Corvin also met with Mr. Beler on July 2, 2020 for approximately one hour and forty minutes, via videoconference. *Id.* at 4. On July 21, 2020, Dr. Corvin completed his expert report, which concluded ████████ ██████████████████████████████████████████████████████████ and that Mr. Beler "does not meet the *Sell* standard for the involuntary administration of psychiatric medication." *Id.* at 2–3.

In support of his expert opinion, Dr. Corvin offered testimony before the Court during Mr. Beler's *Sell* hearing. ██████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████ Based on his assessment of Mr. Beler,

Dr. Corvin opined that no course of forcible medication would be substantially likely to restore

Mr. Beler to competency. *See id.* at 147.

███████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████ ████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████

█████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████  █

      █████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

---

[5] Dr. Cuccio explained that the 2019 Butner *Sell* Appendix was prepared by BOP psychiatrists from FMC Butner, *see* 8/24/2020 Tr. at 91, and that the Appendix is a BOP document used "to help educate the Court," *id.* at 89:6; *see also id.* at 90:16–20 ("This is something to help us understand, since we are talking about Mr. Beler and his medications specifically, and we're talking about how to treat him, we have to have some basis upon which to do that and decide if it's medically appropriate.").  Dr. Cuccio further testified that she relied on the 2019 Butner *Sell* Appendix when drafting her expert report for Mr. Beler in this case.  *See id.* at 89:18–20.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███  For these reasons, Dr. Corvin concluded that the involuntary treatment plan proposed by the BOP was medically inappropriate and was not substantially likely to restore Mr. Beler to competency.  *See* 9/1/2020 Tr. at 63, 67.

**D. Subsequent Proceedings**

Following the conclusion of the Court's *Sell* hearing in September 2020, Mr. Beler continued to receive competency restoration treatment at FMC Fort Worth from Dr. Armstrong. *See, e.g.*, Suppl. BOP Rec., ECF No. 108-1, at 55 ████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

## II. CONCLUSIONS OF LAW

The government now seeks an order compelling the involuntary medication of Mr. Beler, for the purpose of restoring his competency for trial. An order "authorizing the forcible medication of an incompetent Mr. Beler has serious consequences," which implicate a "defendant's 'significant constitutionally protected liberty interest in avoiding the unwanted administration of [REDACTED].'" *United States v. Gamarra*, 940 F.3d 1315, 1319 (D.C. Cir. 2019) (Pillard, J., concurring) (quoting *Sell v. United States*, 539 U.S. 166, 178 (2003)). Accordingly, "forced medication to render a defendant competent for trial is intended to be 'rare,'" *Gamarra*, 940 F.3d at 1319 (quoting *Sell*, 539 U.S. at 180), and, as the Supreme Court explained in *Sell*, it is only appropriate where: (1) "important governmental interests are at stake," (2) "involuntary medication will significantly further those concomitant state interests," (3) "involuntary medication is necessary to further those interests," and (4) the "administration of the drugs is medically appropriate, *i.e.*, in the patient's best medical interest in light of his medical condition," *Sell*, 539 U.S. at 180–81. To show that "involuntary medication will significantly further" the "state interests" in prosecution, *id.*, the government must establish that the proposed medication is "substantially likely to render the defendant competent to stand trial," *Gamarra*, 940 F.3d at 1317 (quoting *Sell*, 539 U.S. at 181).

The government bears the burden of proving each of the *Sell* factors by "clear and convincing evidence." *United States v. Dillon*, 738 F.3d 284, 291 (D.C. Cir. 2013). In evaluating

whether the government has met its burden, the Court will take careful note of the "benchmarks" outlined in *Gamarra*, which the D.C. Circuit "expect[s] the government to meet when requesting approval for forcible medication." *Gamarra*, 940 F.3d at 1320. Because the government bears the burden of demonstrating each *Sell* factor by "clear and convincing" evidence, failure to demonstrate any one factor requires a denial of the government's request for involuntary medication. *Dillon*, 738 F.3d at 291.

****

On the record before the Court, the government has demonstrated that Mr. Beler suffers from a ██████████████████████████████████. The government has also proffered credible evidence, particularly through its expert witness Dr. Cuccio, demonstrating that ████████████ would improve Mr. Beler's clinical prognosis. Nonetheless, the defense has also offered equally credible evidence, namely through the expert testimony of Dr. Corvin, indicating that ████████████ would not restore Mr. Beler to competency for trial. After scrutinizing the complete record, the Court concludes that this competing evidence rests in equipoise. Given this complex and offsetting evidence, the Court does not find "clear and convincing evidence" demonstrating that ████████████ is "substantially likely to render [Mr. Beler] competent to stand trial." *Gamarra*, 940 F.3d at 1317 (quoting *Sell*, 539 U.S. at 181). Accordingly, and for the reasons set forth in detail below, the Court will **DENY** the government's *Sell* motion.

To begin, the government has presented strong evidence in support of involuntary ████████████. Here, the government has proposed ████████████ ██████████████████████████████████████████, as well as other "adjunctive medications" to address any side-effects Mr. Beler might experience.

20

*See* Gov't Br., Ex. 4 at 15.  During the *Sell* hearing, the government proffered Dr. Cuccio as an

expert, and she testified credibly in support of this regimen of ███████████████.  █

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████ The Court found Dr. Cuccio's testimony on these points to

be credible and persuasive.

Additionally, there are multiple factors that enhance the credibility of Dr. Cuccio's

testimony.  First, Dr. Cuccio has eight years of prior experience in forensic psychiatry working for

the State of Texas.  *See* 8/4/2020 Tr. at 114.  And while working for the State of Texas, Dr. Cuccio

specifically gained substantial experience on issues of competency, performing approximately

1,000 competency evaluations on disabled patients.  *See id.* at 116.  Furthermore, two additional

BOP employees shared Dr. Cuccio's favorable opinion of ████████████ for Mr. Beler.

Dr. Micono, a BOP psychologist, concluded in July 2019 that Mr. Beler's "prognosis for

restoration appears to be positive, ███████████████████████

███████████████████████ Similarly, the physician administering

Mr. Beler's first *Harper* hearing in May 2020 concluded that ███████████ is the

treatment of choice" for Mr. Beler's diagnosis and presents a "substantial probability" of "restoring

him to competency to proceed with his legal case." Gov't Ex. 4 at 12. Standing by itself, this evidence might be enough to show a substantial likelihood of competency restoration for Mr. Beler.

The record, however, also contains strong *countervailing* evidence that the Court cannot disregard. First, the defense points out that at times Dr. Cuccio strayed from the applicable *Sell* standard in her testimony and instead focused on her clinical prognosis for Mr. Beler. For example, she testified:

> Obviously, I'm testifying in court about a *Sell* issue. Right? And so that's what we're talking about right here. *But I'm also answering questions as a clinician. So there are times when I get those things mixed up.* And I'm talking about what is best for Mr. Beler a lot of times. What is best clinically? What's going to help him in the long run? What's going to help his prognosis? How is he going to live a more healthy life? So yes. I apologize. *I'm not sticking strictly to the Sell criteria here when I'm answering some of those questions.*

9/1/2020 Tr. at 192 (emphasis added). Such testimony indicates that Dr. Cuccio's expert opinion rested, at least in part, on her clinical assessment that ███████████ would improve Mr. Beler's overall prognosis. The Court concurs with Dr. Cuccio's credible assessment that Mr. Beler's clinical condition would benefit from ███████████ and medication. Nonetheless, the dispositive question before the Court under *Sell* is not whether Mr. Beler would benefit from medication generally, but whether the specific medication proposed by the government is "substantially likely to render [him] competent to stand trial." *Gamarra*, 940 F.3d at 1317 (quoting *Sell*, 539 U.S. at 181). The fact that ███████████ might improve Mr. Beler's prognosis, while important in the medical field, does not speak directly to the Court's legal authority to order the injection of such medication *involuntarily*.

On this point, the Court also considers the defense's expert witness Dr. George Corvin, who testified persuasively against the efficacy of ███████████ for Mr. Beler. Dr. Corvin is a distinguished fellow of the American Psychiatric Association and board-certified in

general and forensic psychiatry by the National Board of Physicians and Surgeons.  *See* Def.'s Ex. 1 at 1.  Additionally, Dr. Corvin has offered forensic opinions in over 300 criminal cases, including numerous *Sell* hearings in both state and federal courts.  *See* 8/25/2020 Tr. at 16.  After reviewing Mr. Beler's extensive medical records and meeting with Mr. Beler over a videoconference, Dr. Corvin concluded that Mr. Beler ████████████████████████████████ ████████████████████ and that Mr. Beler "does not meet the *Sell* standard for the involuntary administration of psychiatric medication."  *See* Def.'s Ex. 2 at 2–3.  The Court finds that Dr. Corvin's expert testimony and his conclusion against the efficacy of ████████ medication for Mr. Beler carries weight.

During his testimony, Dr. Corvin supported his conclusion with two persuasive arguments.

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████ ██

████████████████████. It is also noteworthy that Dr. Corvin's opinion on this issue aligns with the

BOP's own 2019 Butner *Sell* Appendix, which states: █████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████    Indeed, Judge Nina Pillard also noted the same fact in her opinion

in *Gamarra*, ████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████

        Finally, the Court notes that after the conclusion of the *Sell* hearing in this case and

following the parties' *Sell* briefing, ████████████████████████████████

█████████████████   ██████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████    Upon receiving notice of these

events, the Court requested supplemental documentation from the BOP regarding Mr. Beler's

health and progress.   *See* Dec. 29, 2020 Min. Order.   The parties then provided further

documentation on January 28, 2021, covering Mr. Beler's BOP records from January 5, 2021

through January 26, 2021.  *See generally* Suppl. BOP Rec., ECF No. 114.  The Court has now

reviewed this documentation in its entirety.

        As an initial matter, this new documentation confirms █████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████. As explained above, however, the question for this Court under *Sell* remains whether *involuntary* medication is "substantially likely to render the defendant competent to stand trial." *Gamarra*, 940 F.3d at 1315. ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████

    The remaining supplemental documentation is also inconclusive. ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████ There is no clear explanation in the record for this inconsistency.

                ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████    ████   ██████

████████████████████████████████████████████████

█████████████████████████████████████

     Taken together, the entirety of this record evidence stands in equipoise.  A                    ,

the government has offered credible evidence to demonstrate that Mr. Beler would benefit from a

regimen ██████████████████.  But the defense has also offered credible evidence

demonstrating that such medication would not restore Mr. Beler to competency for trial.  And

while the most recent BOP documentation clearly shows █████████████████████

████████ it does not conclusively speak to the efficacy of forced medication for competency

restoration purposes.  Consequently, the Court cannot find "by clear and convincing evidence"

that the government's proposed course of medication is "substantially likely" to restore Mr. Beler

to competency for trial.  *See Gamarra*, 940 F.3d at 1315 (quoting *Sell*, 539 U.S. at 181) (emphasis).

The Court, therefore, may not order involuntary medication under *Sell*.

███████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████  ████████████████████████  ████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████    ████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████

## III.    CONCLUSION

For the reasons set forth in this Memorandum Opinion, the Court **DENIES** the government's motion for involuntary medication under *Sell*. ████████████████████

████████████████████████████████████████████    ████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████

An appropriate Order accompanies this Memorandum Opinion.

**Dated**:  January 29, 2021

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge